# Lies *against* Stub.

A defendant in an action of ejectment is not a competent witness for his co-defendants, although, in point of amount, he has a greater interest in the plaintiff's recovery.

S. devised his plantation to his two sons, John and Jacob, at a valuation of 10,000 dollars; and directed, that it should not be divided into more than two tracts, without the consent of all his children; and if John and Jacob refused to take it, then one or two of his other sons might take it, and if none of them would take it, then one or two of his sons-in-law might take it; and if none would take, then his executors might sell it.    *Held*, that upon Jacob's refusal to take the land at the valuation, John had a right to take half in the first place, and the whole, if neither Jacob nor any other brother was willing to take a moiety along with him.

Though equity generally relieves against plain mistake, it interferes not, for misconception alone, to overturn an agreement made to prevent a domestic feud.    These agreements partake largely, in their nature, of the compromise of a doubtful right, which is a sufficient consideration.

ERROR to the common pleas of *Berks* county.

This was an action of ejectment for a tract of land, by Adam Lies against John Stub, and William Stub, and all the other devisees of Adam Stub, deceased, as tenants in possession.

[Lies v. Stub.]

The plaintiff gave in evidence, the will of Adam Stub, deceased, dated the 5th of July 1832, which contained the following clauses:

" It is my will, that my two sons, John and Jacob, shall have my plantation with the appurtenances thereunto belonging, for the sum of 10,000 dollars, being the plantation I now live on, situate in the township of Tulpehocken, as aforesaid, which 10,000 dollars shall be equally divided amongst my twelve children, including the two that takes the plantation, in manner following: 1000 dollars yearly, till paid. The said plantation shall not be divided into more than two tracts, unless my children will agree and divide it into more, amongst themselves; provided John and Jacob will not take the plantation at the above price, then one or two of my other sons may have the next chance to take it at the same price; and if none of my sons will or should take it at that, then one or two of my sons-in-law may have it at the same price; and should none of my children take it, then I do order and direct that my executors hereinafter named, or the survivor of them shall, as soon as conveniently, sell and dispose of my said plantation, with the appurtenances to such person or persons, and for such price or prices, as may be reasonably gotten for the same.

" And as touching all the rest, residue, and remainder of my estate, real and personal, of what kind or nature soever the same may be, in the county of Berks, aforesaid, or elsewhere, I give and devise the same unto my twelve children, and all the above mentioned unto my twelve children, Magdalena, Sarah, John, Michael, Elizabeth, Anna Maria, Jacob, Peter, Susanna, Catharine, William, and Samuel, and to their heirs and assigns forever, to be equally divided among them.

" The 1000 dollar payment, as above mentioned, or any money that is first paid to my heirs, shall be paid to those that *has* not received any, or until they have as much as the others, so until they are equal; and I do hereby authorize and empower my hereinafter executors, or the survivor of them, to sign, seal, execute, and acknowledge all such deed or deeds of conveyance as may be requisite and necessary for the granting and assuring the same to the purchaser or purchasers thereof, in fee simple.

" And lastly, I nominate, constitute, and appoint my two sons, Michael and William, to be the executors of this my will, hereby revoking all other wills, legacies, and bequests, by me heretofore made, and declaring this and no other to be my last will and testament."

He then gave in evidence, an agreement, dated the 9th of February 1833, signed by all the devisees and legatees of the testator, that they, each and all, refused to take the land, and that the executors should sell it, as the will directed. In pursuance of which, the executors sold the land at public sale, on the 15th of November 1833, to Adam Lies, the plaintiff, for 67 dollars 25 cents an

[Lies v. Stub.]

acre, amounting to 13,040 dollars. Before suit brought the plaintiff tendered the purchase money.

The defence was, that John, one of the devisees, would not agree to the sale of the land, that he had always resisted it, up to the time when the agreement referred to, of the 9th of February 1813, was executed, and desired to take the land himself; and that his brothers insisted upon it, that he had no right to take under the will; eventually he agreed to refer the question to Joseph D. Biles, whether he had or not, a right to take, and Mr Biles gave him his opinion, that he had not; then he signed the agreement to sell; but before the day of sale arrived, he was differently advised, and gave notice to the bidders at the sale, that no title should be made, that he would take one half, or the whole of the land, under his father's will. And on the 28th of November 1833, he tendered to each of the heirs their share of the valuation money, due as the first payment.

Upon the trial, the defendants offered William Stub, one of the defendants, as a witness. The plaintiffs objected to him, on the ground of interest and of his being a party to the suit. The court overruled the objection, for the reason that the witness's interest was in favour of the plaintiff's recovery. The plaintiff excepted.

The court below charged the jury, that if they believed that John executed the agreement in ignorance of his rights, and in consequence of an imposition practised upon him by some of his brothers, he was not bound by it; and if he gave notice at the sale, of the circumstances under which he had signed the agreement, there was no such contract made with the purchaser as it would be inequitable to interfere with. The court was also of opinion that John had a right to take the half of the land, or the whole of it if all the other devisees refused to take.

Errors assigned.

1. The court erred in admitting William Stub as a witness.

2. The court erred in charging the jury, that John Stub could take the place alone, under the will, if Jacob refused taking.

3. The court erred in charging the jury, that if John was mistaken, as to his rights, under the will, his agreement that the land should be sold did not bind him.

4. The court erred in charging the jury, that the rule that ignorance of the law does not protect a party from the obligation of his contract, did not apply in this case.

5. The court erred in leaving to the jury to find that the plaintiff had full notice of John's mistake, acceptance, and claim, when there was no evidence of such notice.

6. The court erred in charging the jury, that John Stub could take the place alone.

7. The court erred in leaving it to the jury to find that the

plaintiff had notice of fraud practised on John, when there was no evidence from which the jury could find such notice.

8. The court erred in charging the jury, that if the plaintiff, at the time of purchase, had full notice of the facts in regard to John's mistake, acceptance, and claim, he cannot recover.

*Strong* and *Smith*, for plaintiffs in error, cited 1 *Johns. Chan.* 512; 2 *Johns. Chan.* 51; 3 *Watts* 47; 3 *Vez.* 378; 2 *Johns. Chan.* 182.

*Dunn*, for defendant in error, as to the *first exception*, cited 2 *Penns. Rep.* 229; 3 *Watts* 160; 5 *Watts* 69; 16 *Serg. & Rawle* 269; 3 *Rawle* 334. *Second exception*, 3 *Bin.* 149; 8 *Serg. & Rawle* 258; 2 *Yeates* 45. *Third exception*, 1 *Bin.* 27; 3 *Serg. & Rawle* 331; 2 *East* 471; 4 *Dall.* 250. *Fourth exception*, 1 *Bin.* 132; 3 *Penns. Rep.* 67; 2 *Watts* 148.

The opinion of the Court was delivered by

GIBSON, C. J.—The exception to the witness must prevail. Not only was his possession endangered by the action, but he was, in all other respects, in the ordinary predicament of a defendant of record. It is unavailing to say, his share of the estate would be increased by sustaining the plaintiff's title. No balancing of advantages could counterbalance his position as a party maintaining the issue by his own testimony.

The will is obscure, and would afford no encouragement to execute it according to the letter. The testator's main intent was, to keep the estate in his family, by offering it to his sons at a fixed price, according to the order of primogeniture; the first two being designated by name, but in a way to prevent it from being parted, so as to accommodate more than two, except by common consent; and with further provision, that if the two should reject it, *one* or two of the younger sons might accept it, regard being had, as I take it, to the same order of choice. There was no intent that particular sons should take in couples, or not at all; or that any of them should, in no event, take more than a moiety. By naming conjunctively those who were first to be called upon for their choice, the testator could have had no rational motive to make them partners in the transaction; and none such ought to be imputed to him. John had, therefore, an indisputable right to take the half in the first place; and the whole, if neither Jacob, nor any other brother, were willing to take a moiety along with him; he consequently became a party to the general arrangement in ignorance of his right. But though equity generally relieves against plain mistake, it interferes not, for misconception alone, to overturn an agreement made to prevent a domestic feud or family dishonour. These agreements partake largely, in their nature, of the compromise of a doubtful right, which is a sufficient consideration.

[Lies v. Stub.]

And it is certainly more reasonable, that the consequences of a party's mistake be borne by him, than that the peace of those who did not contribute to produce it, should be disturbed to remedy it. In Frank *v.* Frank, 1 *Ca. in Ch.* 84, an agreement, that devised lands should be enjoyed according to the will, was enforced betwixt an elder brother devisee of copyhold, which did not pass because there had been no surrender to the use of the will; and a younger brother devisee of entailed lands, which did not pass, because there had been no recovery; and this too, though the elder was entitled to the whole as heir at law, and the agreement was induced by a groundless assertion of the younger, that a recovery had in fact been suffered. That case was not less pregnant than is the present, with misconception, and even suspicion of fraud. But the agreement was doubtless thought to have been fairly obtained; for though equity refuses to rescind a family arrangement for mistakes merely, it deals as severely with misrepresentation in the procurement of it, as with fraud in any other transaction. By the principles of that case, the controversy in this is reduced to the single question of practice upon the intellects of John; of which, the only evidence in the cause, is the testimony of the defendant William. But to say nothing of his competency already disposed of, it is by no means clear that the conduct of Michael, the only party implicated, was unfair. Why might he not sincerely believe John's pretension to be unfounded? They had referred the dispute to the arbitration of counsel, whose opinion accorded with that which Michael attempted to impress; and if he actually believed that he himself was entitled, or that the proposed arrangement was calculated to promote the general interest without any particular sacrifice, it is not easy to see why he might not fairly attempt to prevent others from encouraging John to stand in the way of what he might think to be John's interest, as well as that of the family. I pretend not to say that such was the truth, but the acts of Michael are susceptible of this interpretation, and fraud is not to be imputed to him without proof of it. This part of the case, therefore, may have been unduly pressed; but as the direction in this particular is not perhaps a legitimate subject of review, and as the cause is to go to another jury on different evidence, we intimate no more than the principles that are to rule it in point of law.

Judgment reversed, and a *venire facias de novo* awarded.