[ PHILADELPHIA, JANUARY 25TH, 1840. ]

## BARTON *against* WELLS.

**IN ERROR.**

1. Where it appears from the record, that deeds, records or papers material to a sufficient understanding of the case were given in evidence in the Court below, and these documents are not annexed to the record, the Court will affirm the judgment.
2. Agreements made for the settlement of family disputes are favourably regarded by the Courts; and such agreements will be more strictly enforced than others, especially after a lapse of time.

ERROR to the Court of Common Pleas of Pike County.

On the return of the record it appeared that James Barton, and Sarah his wife, brought an action of ejectment against Nathan Wells, to recover a tract or piece of land situate in Upper Smithfield township, in the said county of Pike, containing ten acres, or thereabouts.

The cause was tried before SCOTT, (President) when various deeds, records, and papers were given in evidence on the part of the plaintiff and defendant respectively. The contents, however, of these documents were not stated in the bill of exceptions; nor were they, except in one instance, annexed to the record.

The charge of the Court, to which exception was taken, was as follows :

" The plaintiffs claim the land in controversy in right of Sarah Barton, late Sarah Biddis, as one of the children and heirs of John Biddis the elder, deceased ; and their right to recover any portion of the land may depend upon the construction to be given to the agreement executed between James Barton, John Clark, George Biddis and John Biddis, on the 24th of October, 1820. We learn from the testimony of David Wells, Hugh Ross and John Brink, and from the record exhibited, and from the terms of the agreement itself, that difficulties and disputes existed between the members and connexions of the Biddis family ; and from the witnesses named,

VOL. V.—29

that the right to the very land in dispute was in controversy between James Barton and George and John Biddis; and from the testimony of John Brink that the object of the agreement of the 24th of October, 1820, was to finally settle all their family disputes; that it was at the instance of John Biddis, then on his death-bed, that the family were assembled, and that agreement entered into, that he might die in peace. From all the circumstances under which the said agreement was entered into, from its object, the settlement of family disputes, and from the terms of the agreement itself, the Court are of opinion, that it should at least be construed as a covenant on the part of Barton not to sue, and that upon this ground, in point of law, the plaintiffs ought not to recover in this suit."

A verdict was given for the defendant; and the plaintiffs took a writ of error, and assigned the following errors.

" 1. The Court erred after admitting parol evidence to explain and extend a written contract concerning other lands and other objects to the land in controversy, in charging the jury from all the circumstances under which the said agreement was entered into, from its object, the settlement of family disputes, and the terms of the agreement itself, the Court are of opinion, that it should at least be construed as a covenant not to sue; and that upon this ground, in point of law the plaintiff ought not to recover in this suit.

2. The Court erred in taking the decision of the facts from the jury."

Mr. *Mallery,* for the plaintiffs in error.

Mr. *Scott,* for the defendant in error, was stopped.

The opinion of the Court was delivered by

HUSTON, J.—It being a rule of this Court not to reverse, unless for error apparent on the record, we can do no other than affirm the judgment in this case; not exactly because we see that every thing was right, but because we have nothing before us to show that any thing is wrong. The case has been in this Court many years; and different counsel have succeeded each other in the management of it. At this term a hearing and decision was asked. The paper book contains a reference to deeds, suits and agreements, not a few—to judgments, *levaris* and sheriff sales: but not one of these has been attached to the record, except an agreement between old John Biddis and his sons George and John, in 1804. The very deeds and agreements mentioned in the articles of settlement of the the 24th of October, 1820, are not before us; and no one pretends to even state their contents.· The records of the cross-actions were

(Barton v. Wells.)

in evidence at the trial of the cause in the Common Pleas; but it is only from the charge of the judge that we have any intimation on what they were founded. He states that the land now in dispute was the subject of those suits; and to terminate them was the object of the agreement of October 24th, 1820.

It is a general rule, that where a dispute exists, and especially if a suit or suits are pending, and the parties enter into an agreement for the purpose of settling the dispute, they will be bound by the agreement, unless there was some fraud used by one party. It will not be sufficient to avoid such agreement, that it is afterwards discovered that the better right was in one of the parties. *Perkins v. Gay,* (3 *Serg. & Rawle,* 331.) And in the case of a settlement of family disputes, the Court will more strictly enforce agreements to settle disputes, especially after lapse of time. *Case v. Case,* (1 *Pr. Wms.* 727.) *Stapleton v. Stapleton,* (1 *Atkyns,* 10-16). And in *Stockley v. Stockley,* (1 *Ves. & Beames,* 29,) it is said, that Courts will enforce agreements to settle family disputes, upon principles which are not applied to agreements generally. In *Cary v. Cary,* (1 *Ves.* 19,) such an agreement was enforced, though one of the sons was drunk when he signed; and it is intimated that the exercise of parental authority may not be sufficient to avoid it. 1 *Story's Equity,* 1257; and 143-6-7, and 151-2: And see *Jourdan v. Jourdan,* (9 *Serg. & Rawle,* 276-7;) and *Lies v. Stub,* (6 *Watts,* 48;) in both of which the cases were put on its being a compromise of family disputes; and in neither of which the decision would have been the same, but for that circumstance. The last case of *Lies v. Stub* had been in this Court once before; and the decision quoted was on full consideration; and though there was possibly, nay, probably, some mistake of his strict right by one of the ten children, the agreement was enforced.

In the present case, we have literally nothing before us, but a deed of the father to one child, in 1804—this doubtful, on the face of it, as to the property in dispute. We see that other agreements were made by the father with other children, at some time; but we have not those agreements, which might throw light on the description of property in the one we have. We have reference to three suits between the brothers and sister, but we don't know to what they related. We have proof that at the instance of a brother, since dead, the family met in 1820; and the article on the record was drawn and executed, to make an end of all suits and all disputes about the family estate. There might be, possibly, such proof of fraud or imposition as would render this inoperative, and open the door to a fresh crop of suits; but from the manner it is sent here, we have nothing to impeach its fairness—nothing to show any mistake or surprise; and we must affirm the judgment. No slight proof would avail to annul and make such an agreement inoperative.

　　　　　　　　　　　　　　　　　　　　　　Judgment affirmed.