FARLEY, *in equity, versus* NATHANIEL BRYANT,
BENJAMIN HARRIS,
WILLIAM TURNBULL *and*
MARY TURNBULL, *his wife.*

The lapse of many years between a conveyance of *improved* land and an application to have the deed reformed, for an alleged mistake in its description of the land, would impose a serious dissuasive upon the action of the court.

But in relation to *unimproved* lands, and especially where the occupation of the grantee and his assigns has indicated no claim under the description alleged to have been inserted by mistake, the lapse of time is comparatively of little weight.

To authorize the court to reform a deed upon the allegation of a mistake, the mistake must be precisely alleged and clearly proved.

Such proofs may be established by parole testimony.

In an adjudication upon such a point, the evidence from applying the description in the deed to the marks, monuments and reservations upon the face of the earth, to which it refers, thereby to discover its agreement or disagreement therewith, is an element entitled to great consideration.

Farley *v.* Bryant.

So also it is of great importance to inquire whether the grantees and their assigns have or have not, in the management of the land, conducted as if considering the disputed part of the land to have been yet unconveyed by the deed, under which they claim.

The reservation of a right to pass upon an old path-way to *one* lot of land *may* not confer the right to pass further upon the same path-way to *another* lot.

Where, in a conveyance of land, a boundary is described in the language intended to be used, though under a misapprehension as to its construction and effect, a court of equity can make no correction.

Parole evidence is inadmissible to show that the grantor, in describing the boundaries, supposed that the words used would have an effect, different from that which the law affixes to them.

A mistake in describing the boundaries in a deed of conveyance, cannot be corrected to the damage of the assignees of the grantee, unless such assignees purchased with notice or without value.

Though the proof, to overcome an answer in chancery, must be equivalent to the testimony of two credible witnesses, yet it need not be direct and positive.

When a plaintiff in equity, in order to obtain relief, must have a decree against a defendant, he cannot use the testimony of that defendant, against the other defendants.

A defendant in equity cannot use a co-defendant as a witness, to prevent the obtainment of a decree against them both.

THE bill sets forth, in substance, that in 1832 the plaintiff sold a lot of land in Newcastle to Benjamin Harris, " beginning at the north-west corner of the plaintiff 's garden, thence running north sixty-six and one-fourth degrees west one hundred and two rods to a stake ; thence west sixty-six and one-fourth degrees south twelve rods to a stake and stones ; thence north sixty-six and one-fourth degrees west about one hundred rods to a stake and stones, at or near the easterly edge of the alder growth, skirting Winslow's meadow ; thence southwesterly by the edge of the alder growth to the Nichols line, and continuing on Nichol's line south-south-westerly thirty-six rods to the north-west angle of land, then in occupation of James Robinson ; thence south-easterly [by various courses] to the point of beginning ;" reserving " the privilege of a cart road from my house westwardly through the said conveyed land, where the travel usually goes, to my wood lot adjoining Alexander Barstow's south line, and also to a field adjoining James Robinson's north line," &c. ; —

*that* Harris entered into and continued the occupation of the same, according to said boundaries, until 1837, when he bargained the same to the defendant, Bryant; *that* Harris delivered the Farley deed to Bryant, in order that Bryant should thereby procure a new deed to be made, by which Harris should convey to Bryant; *that* Harris executed a deed to Bryant, who retained both deeds, and sent them to the registry office to be recorded; *that* Bryant, in 1847, conveyed the land to Mary Turnbull; *that* Turnbull now claims to hold from the plaintiff a lot of land under his deed to Harris, which the plaintiff never meant to convey to Harris; *that*, on examining the record of the deed to Harris, it is found that the first line in the description of the land, being written in figures, purports to be 182, instead of 102 rods in length; *that* at the westerly end of the lot it is described as bounded by the edge of the Winslow meadow, instead of the alder growth : —

The plaintiff thereupon charges, that, in the description of the first line, a fraudulent alteration has been made, or that the deed was incorrectly recorded, or that there was a mistake by inserting 182 instead of 102 rods, and that in the description of the westerly end of the lot there was a mistake by inserting the words, " to the easterly edge of the Winslow meadow to a stake and stones ; thence southwardly by the edge of said meadow to the Nichols line," instead of the words, " to a stake and stones at or near the easterly edge of the alder growth, skirting Winslow's meadow; thence south-westwardly by the edge of the alder growth to the Nichols line." Whereupon the plaintiff prays, that said Harris, Bryant and Turnbull may respectively be required to execute to the plaintiff releases and quitclaims of said last mentioned two tracts of land; viz : — the tract of 80 by 12 rods, and also the strip covered by the alder growth, above mentioned, and that they be enjoined from selling or attempting to sell the same, and for further relief.

The answer of Harris admits the mistake to have happened as alleged. The answer of Bryant admits the conveyance by Harris to him as alleged, but denies knowledge of any error or mistake. The answers of Turnbull and wife state

Farley *v.* Bryant.

that in March, 1845, they entered into possession of the land, under a contract with Bryant for the purchase of it, and that in February, 1847, Bryant accordingly conveyed it to Mrs. Turnbull, and they deny all knowledge of any mistake.

Of the evidence, (occupying more than 1260 manuscript pages,) it is not deemed necessary to present any thing further than that which appears in the opinion of the court.

The subjoined diagram will sufficiently illustrate the boundary lines in question.

*Ruggles* and *Farley*, for the plaintiff.

It is a leading ordinance in our code, that equity can relieve against frauds and mistakes. 20 Maine, 363. Parole evidence is always receivable to explain latent ambiguities, of which this case presents a specimen. Equity alone can reform the deed. 1 Greenl. Ev. 293; 1 Maine, 278; 17 Pick. 222; Sugden on Vendors, 10th ed. 255.

In the deed from Farley to Harris, there was either *fraud* in the alteration of the cypher in "102," expressing the length of the first line of the lot; *or* the deed was inaccurately recorded; *or* there was a manifest mistake in the description of either the *first* or *third line* of the lot.

If there was fraud in altering the deed after it was executed and delivered, no subsequent grantee, with or without notice of the fraud, can take more by his grant than the immediate grantee of Farley could.

The same is predicated of an erroneous recording of the deed.

If it was a mistake in writing the deed, it is a *manifest* mistake in expressing the length of either the *first* or *third* line of the lot, as both cannot be right. This is made *manifest* upon the application of the deed to the face of the earth. In such case, all that can be required of plaintiff is to furnish such proof as will satisfy the court, as to which line the mistake was made. One or the other is too long by 80 rods, and the only question is, in which the error exists. The mistake being made apparent, no such strong, conclusive evidence is required, as has been held to be necessary to establish a mistake by *extrinsic* evidence alone, and to justify the interference of a court of equity. *Preponderating* evidence is sufficient to entitle the party to relief.

There is in this case not only the answer of Harris, the plaintiff's immediate grantee, admitting the truth of the allegations of bill, but a great mass of evidence, establishing the facts relating to the mistake and notice to the subsequent grantees.

Farley *v.* Bryant.

But we contend that it was unnecessary for plaintiff to produce proof of notice to grantees of Harris, because : —

*First,* The mistake or error is palpable and manifest from the deed itself in its application to the face of the earth. And the deed therefore is sufficient notice to subsequent purchasers to put them on inquiry. If they disregarded the admonition, equity will not favor them to the injury of others. They are not on equal footing in equity.

*Secondly,* The deeds to the subsequent grantees contain the same description of the premises in all respects, being copied from the original deed to Harris. They show the same manifest errors, and the grantees accepted them with these imperfections. They will therefore be supposed, in equity, to have accepted the deeds subject to the same interpretation or correction. In this case the same rules of evidence, and principles of equity apply, as are applicable to devisees, assignees, heirs, and purchasers with notice, or voluntary grantees. They, like heirs, inherit the infirmities of the original deeds. Like assignees, or purchasers with notice, they take the same title with all its frailties, and subject to the same equities.

If notice to the Turnbulls should be held necessary to subject them to the equities arising between the original parties, notice to the husband is notice to the wife. The making of the deed to her alone, without the knowledge of the husband, she paying no consideration, should not enable Bryant to escape from the remedy sought by the bill. Under such circumstances the husband and wife are, for this purpose, joint tenants of the premises, and notice to one is notice to both. Otherwise she may be regarded as the trustee of the title for her husband, the consideration being paid by him, and not out of any property of hers. . If Bryant and Turnbull supposed their knowledge and understanding, as to what was intended to be embraced by these deeds, could be *proved,* and thought it advisable to have the conveyance made to one whose knowledge could *not be proved,* and therefore had the deed made running to the wife of Turnbull, such a manœuvre cannot avail either in a court of equity, or court of law.

Bryant cannot be a witness for the Turnbulls, for he would be testifying in favor of his own cause ; for, to the plaintiff, Bryant is as much a party defendant, as he was before he discovered and adopted this novel method of dodging from the front of his adversary.

One party cannot be a witness for another party in the same suit, when they stand in the relation of privies, either as grantors and grantees, assignors and assignees, or otherwise.

In regard to the error in describing the western head-line, that in some measure depends on the first error alleged, inasmuch as the length and termination of the third line has a material bearing upon it. The evidence touching the first error, therefore, applies to the second, and *vice versa.* It is also of the same character. The error is made manifest by the application of the deed to the face of the earth, and in the most favorable aspect for defendants, it is a question which the deed itself presents, and which does not depend on *extrinsic* evidence alone. Perhaps it may be regarded as a question of construction merely. In a court of law it would be so ; but this court, as a court of equity, having acquired jurisdiction, will inquire as to what· was the understanding of parties to the original deed.

*Lowell*, for the defendants.

This bill has not secured to itself the jurisdiction of this court.

It is not strictly a bill of discovery ; and if it were, no discovery has been had, whereby to gain jurisdiction. Neither is jurisdiction given by the prayer for an injunction or for relief. The allegations, upon which that prayer rests, are matter for the jury. If the plaintiffs have any rights on account of mistake or fraud, the law affords a plain and adequate remedy.

In those countries where the civil law, or a code conforming to the general provisions of the civil law, had been originally adopted, it would seem that the courts have more freely received *parole* testimony to establish the existence of alleged mistakes in deeds, and have, upon that evidence, not unfrequently

reformed those instruments, as being within the known policy of their general system; while in other countries, where the common law was received as the *foundation*, with specific equity powers subsequently engrafted thereon, the courts *very seldom* reform deeds of alleged mistakes, upon *parole evidence alone,* as the practice would be inconsistent with their general system of jurisprudence, and with the habits and condition of the people. This may account for some of the conflicting cases found in the books. In this State, in the absence of any preliminary agreement in writing, by which a mistake can be made apparent, our deeds are not reformed of alleged errors, shown only by parole evidence, when the existence of the errors is denied by the answer. The statute of frauds is as binding in equity as in courts of common law; and deeds of conveyance and other solemn instruments, required by the statute to be in writing, will not ordinarily, as a *rule of practice* in chancery, be reformed of alleged mistakes, on *parole evidence alone.*

Benjamin Harris is incompetent as a witness for the plaintiff, and for two reasons : — 1, It would be against the policy of the law to admit him ; and 2, on the ground of interest. The deed from Farley to himself, and his deed to Bryant with his answer to plaintiff's bill, place him in just such a situation as requires his own deposition to relieve him from liabilities. 1 Greenl. Ev. p. 536—7, sect. 391—2 and notes, and cases cited in the notes.

Nathaniel Bryant is a competent witness for William and Mary Turnbull; for having purchased *with* and sold *without* covenants, he has no interest in the land. He had assigned, without covenants, his cause of action against Farley.

But, if the allegations in the bill were all proved as to Nathaniel Bryant, still the bill could not be sustained, because *Turnbull and wife* are innocent purchasers, without notice.

The leading authorities in support of all these points are *Shelbourn* v. *Inchiquin,* 1 Brown's Chan. 338 ; *Farnham* v. *Child, ibid. ;* 1 Story's Eq. Jur. p. 178 and 179, sect. 165 ; *Hanckle* v. *Royalasses Co.,* 1 Vesey, 377 ; *Davis* v. *Sim-*

Farley v. Bryant.

mons, 1 Cox, 400; *Townsend* v. *Sturgeon*, 6 Vesey, 332, 338; 1 Story's Juris. sect. 152, 165, 118, 153 and 155; *Elder* v. *Elder*, 1 Fairf. 8; *Dwight* v. *Pomroy*, 17 Mass. 303; *Peterson* v. *Grover*, 20 Maine, 363; *Whitman* v. *Weston*, 30 Maine, 285; *Mosely* v. *Virgin*, 3 Ves. Jr., 184; *Brown* v. *Haven & als.* 3 Fairf. 179; *Simpson* v. *Vaughn*, 2 Atkins, 31; *Jones* v. *Stouson*, 3 Atkins, 389; *Hunt* v. *Rousmanier*, 8 Wheat. 211; *Rust* v. *Barlow*, 3 Brock. 454; *Durand* v. *Durand*, 1 Cox, 58; 2 Evans' Pothier, No. 18, p. 408, 447; *Malden* v. *Merrill*, 2 Evans' Pothier, 13; Cooper on Eq. Plead. 281 to 285; *Pickering* v. *Hanson*, 4 Taunt. 786; *West* v. *Emerson*, 2 Peere Williams, 349; *Barton* v. *Morris*, 15 Ohio, 408.

It is submitted that the "eastern edge of an alder growth, skirting Winslow's meadow," is quite too uncertain and pliant a boundary, to take the place of well known monuments. We might next expect for boundaries a growth of Canada thistles, or a region of dandelion grounds. There is already quite enough of looseness in boundary descriptions. It is hoped at least, that movable and floating objects will not be permitted to represent the dividing lines, between the owners of adjoining lands.

The sanction of the court, if given to this bill, will be of alarming tendency. Soon the most of our real actions and actions of trespass will be transformed into expensive equity suits.

There is a fearful maelstrom lying off the Equity Judicial coast of Maine. For protection against so great an evil, the appeal is confidently made to the wisdom and the firmness of this honored tribunal.

SHEPLEY, C. J., — The bill alleges, that two mistakes were made in the conveyance of a tract of land by the plaintiff to Benjamin Harris on Oct. 6, 1832.

The answer of Harris admits, that the alleged mistakes were made. The answer of Nathaniel Bryant admits, that Harris conveyed the same tract to him by the same descrip-

Farley *v.* Bryant.

tion, and it denies all knowledge of any error or mistake. The answers of Turnbull and wife state, that an agreement was made in the month of March, 1845, between Bryant and Turnbull for a conveyance of the same land; that they entered into possession of it; and that on February 17, 1847, it was conveyed by Bryant to Mary Turnbull, and they deny all knowledge of any mistake.

The time elapsed between the conveyance made by the plaintiff and the filing of his bill on November 14, 1848, would induce the court to hesitate long, before it would decree, that a conveyance of *improved* lands should be so reformed as to affect the title of any portion of the land under improvement; for it would tend strongly to show, that there could have been no mistake, or that any claim to have it corrected had been waived or adjusted.

When, as in this case, that portion of the land alleged to have been conveyed by mistake, appears to have been *unimproved*, and not to have been so occupied by cutting trees, or otherwise, as to cause the mistake to be discovered; and especially when the occupation of the grantee and of his assignees has been such as to indicate, that the conveyance was made in accordance with the expectations of the grantor, time can have comparatively little weight.

To authorize the court to reform the deed, there should appear to have been a plain mistake clearly proved. The precise mistake or error should be clearly ascertained. When it is alleged, that certain words, letters or figures have been inserted or omitted by mistake, the proof should establish the facts alleged. If there be a failure to do this, and the testimony shows, that by a legal construction, the deed may operate contrary to the expectations of the grantor and convey land, which he did not intend to convey, a court of equity would not be authorized to reform the deed. For conveyances are not to be reformed and made to read in such manner as may best carry into effect the intentions of the parties as ascertained from parole testimony, when there is no satisfactory

proof, that they did not use the language, which they intended to use.

The testimony presented in this case, covers between twelve and thirteen hundred written pages. One would expect from the nature of the questions presented to find, that a very large portion of it could have no proper connection with them, or with the rights of the parties. An attempt has been made, not without difficulty, to select the material from the worse than useless portions. No attempt will be made to state from what witnesses the proof of many of the facts is derived. It could be of little use, and it would require too much time and space.

The testimony of two of the defendants has been taken by leave granted on rules exhibiting apparently sufficient causes; that of Harris for the plaintiff; and that of Bryant for the defendants. Both of these depositions must be excluded. If the plaintiff can obtain relief, he must have a decree against both of them. The competency of a witness, cannot depend upon his willingness or unwillingness to testify. The plaintiff cannot compel a defendant in equity to testify as a witness when, if successful, he must have a decree against him. The testimony of a defendant cannot be taken and used to prevent a decree against himself and others. *Paris* v. *Hughes*, 1 Keen, 1; *Palmer* v. *VanDoren*, 2 Edw. 192; *Miller* v. *McCan*, 7 Paige, 458.

The first mistake alleged in the bill is, that the first line of the second tract conveyed was described by figures as being 182 instead of 102 rods in length.

The testimony shows, that the tract conveyed was between the plaintiff's garden on the easterly end, and the edge of Winslow's meadow on the westerly end. That distance measured as contended for by the plaintiff, will not vary much from 202 rods; and as contended for by the defendants not much from 205 rods. The deed as made makes it 282 rods. This proves, that there must have been an error or mistake made in describing the length of lines between the garden and the meadow. The whole distance named in the deed would

extend more than seventy rods beyond the easterly edge of that meadow across Bryant's island and on to land owned by Daniel Perkins.

The deed refers to a stake and stones as monuments then existing at the ends of the first and third lines. The testimony proves, that such monuments, or the remains of them, were found there, when the land was surveyed by order of court, by measuring on the first line 102 rods, and on the third 100 rods, and also that a like monument was found at the end of the second line. And that no monuments were found at the ends of those lines measured as they are described in the deed.

In argument for the defence it is said, that the proof arising out of the whole testimony is not satisfactory, that those stakes and stones, or the remains of them, were the monuments named in the deed. This must be admitted. Yet their existence there, and the fact that none are found at the end of those lines, as described in the deed, taken in connexion with the other testimony, must be considered. If the proof had been entirely satisfactory, that those were the monuments named in the deed, there would have been no occasion for the plaintiff's application to a court of equity for relief on account of this mistake. The monuments in preference to the distances named in the deed would at law have determined the rights of the parties. That those monuments were not named in the deed as existing, when none did in fact exist, is shown by the testimony of Jones, who states that he made a survey of that land not long before it was conveyed, and that such monuments were at that time erected by him; and there are indications hereafter to be stated, that the person who wrote the deed, had the minutes of that survey before him.

The following reservation is contained in the deed : " the privilege of a cart-road from my house westwardly through the land above conveyed, where the travel usually goes, to my wood lot adjoining Alexander Barstow's S. line, and also to a field adjoining James Robinson's north line." It is manifest that the cart-road reserved was an existing one then well

known, for it is reserved, where the travel usually goes.    Admitting the alleged mistake to have been made and the plaintiff's wood lot to be bounded as it would then be, there is found to have been such a road, which he might have traveled to his wood lot, while as the wood, lot would be bounded, if no mistake was made, there was no such road leading to it.    In argument for the defence it is said, that the road also reserved to the field as usually traveled passed over the wood lot as it is claimed by the plaintiff, and that this shows, that the land, over which the road to the field passed, was conveyed.    If the right of way had been reserved only to pass to the wood lot, the plaintiff might not have been entitled to use it for a different purpose to go to his field.    The reservation of the right of way also to the field was therefore appropriate, and its reservation does not authorize the inference, that any part of the wood lot as claimed by the plaintiff was or was intended to be conveyed.

It does not appear, that any of the white oak timber trees or other trees on the wood lot as claimed by the plaintiff have at any time been cut or removed by the grantee or by his assignees.    They appear to have conducted with respect to the wood lot, as they might have been expected to do, with the belief, that it was not conveyed, while the timber trees on the adjoining land have been mostly cut and removed.

These are the more important considerations in addition to the admission of the grantee, apparently against his own interest, inducing the court to come to the conclusion, that there was a plain mistake and that it has been clearly proved.

The second mistake alleged in the bill consists in describing the third line as extending "to the easterly edge of the Winslow meadow, thence southerly by the edge of said meadow to the Nichols line," instead of describing it as extending "to the edge of the alder growth skirting the meadow," and thence "by the easterly edge of the alder growth to the Nichols line."

This, it will be perceived, is in substance an allegation, that the monuments and bounds at the westerly end of the tract were mistaken.    The testimony does not prove, that any par-

ticular words were used by mistake instead of other words. The language used is suited to describe the bounds named, and the language, which, it is alleged, should have been used, is suited to describe different bounds. It is therefore in effect an allegation, that the tract should have been bounded differently at the westerly end, and that more land was conveyed than was intended.

The testimony to prove such a mistake is far from being satisfactory. Jones, who made, as already stated, a survey of the land not long before it was conveyed, states, that he did so for the purpose of having a deed made, and that he gave his minutes of that survey to the plaintiff, to make a deed by them. A copy of those minutes is presented in his testimony; and it appears, that the westerly boundary was described in them as " beginning at the south-west angle of E. Farley's land, at the edge of the Winslow meadow so called, thence southerly as the margin of said meadow runs to Nichol's line, thence as said Nichols line runs to north line of land occupied by James Robinson, 36 rods."

The precise language of the minutes was not used in making the deed, while it does appear, that so much of it was used as to render it highly probable, that those minutes were present, when the deed was written. By those minutes and by the deed, the land to be conveyed was to be bounded by the edge of Winslow's meadow, and was to extend southerly by the margin or edge of that meadow to the Nichols line, and thence to the north line of land occupied by James Robinson. Jones, in his testimony, states in substance, that his meaning was different, and that he intended to say the eastern edge of the growth skirting the meadow. Such testimony is inadmissible; and if it could be received, it would only prove, that the surveyor misdescribed the bounds in his minutes; and it would then appear that the deed was prepared as it was intended that it should be, following substantially the erroneous description of the surveyor. The edge or margin of the meadow could not well be mistaken for some other and different boundary, either by the surveyor or by the owner of the

land.  The latter using that language, when he wrote the deed, could not well be mistaken or ignorant, that the land conveyed was bounded on the edge of the meadow.  It is probable, that he did not expect, that the land between that meadow and the westerly ends of the lots occupied by James and by William Robinson would be conveyed.  If so, his error consisted not in using language, which he did not intend to use, but in a misapprehension of the true construction and effect of that language.  Such an error or mistake is not one which a court of equity can correct.  There is therefore a failure to prove the second mistake alleged.

The mistake, which has been proved, cannot be corrected without proof, that those, who have acquired the title from or under Harris, did not purchase for a valuable consideration, or that they had knowledge of that mistake, or knew that they did not purchase the lot claimed by the plaintiff. This being denied by their answers, the proof to overcome them must be equivalent to the testimony of two credible witnesses.  It need not, however, be direct and positive. Such testimony may not ordinarily be expected to prove, that a purchase was made under such circumstances as to prevent its being regarded as made fairly and in good faith.

The land purchased by Bryant of Harris would adjoin the land of Alaxander Barstow  182 or 102 rods.  The fence between them on that line was to be divided.  A division of it appears to have been made soon after Bryant purchased for the distance of about 100 rods only.  Bryant does not appear to have known, where his bound at the westerly end of that line was ; and he appears to have searched for it some forty rods further west, and to have agreed with Barstow to correct any error made in making that division.  But no error appears to have been discovered or corrected since that time.

James Dodge appears to have occupied the land as a tenant under Bryant from the year 1837 to the spring of 1845.  He states in substance, that Bryant told him, if he was in Barstow's place, he would make Farley pay for half of the wall

standing westerly of the fence divided and on the same line toward the Winslow meadow.

This Farley could be obliged to do only as the owner of the land on one side of that line.

There was no division fence between the wood lot or twelve rod strip, as is called in part of the testimony, and the other land conveyed.   The cattle for pasturage appear to have passed without hindrance over that strip and some of the adjoining land conveyed.   Alexander Barstow states, that his cow was, by leave obtained from Farley, pastured upon the strip during the summers of 1841 and 1842.   Dodge states, that Bryant at one time observed to him, that Farley was not entitled to the pasturage of but one cow or calf, as there was but little feed on the strip, not more than enough for one cow, that it was covered with oaks and the leaves falling from them, so that little feed grew upon it.

Farnham states, that in the month of September, 1843, Francis Davis, deceased, desired to purchase a farm, and that he conversed with Bryant repecting the purchase of this farm, and examined it.   That Bryant requested him, the witness, to show the farm to Davis; that he named to Bryant certain pieces of land that did not belong to the farm, and among them named " the strip on the north side that had the white oak on it, commencing just beyond a little plank bridge at a stake and running back to what is called the Nichols line." That Bryant said in answer, yes, that is it or about it.   He further states, that he heard the conversation between Bryant and Davis, after Davis had examined the land, and his testimony respecting that conversation is in substance, that Davis stated to Bryant, that Farley owned the strip, and that he asked Bryant what he thought it could be bought for, and that he received for answer that he could not tell, that Farley was a pretty hard man to trade with, as he could see by the way he sold to Harris, alluding to this and the other land stated in the conversation not to compose a part of the farm.

In the year 1845 Bryant appears to have agreed with Abner

Stetson to cut, haul and sell to him the oak timber on the land purchased of Harris. Stetson states, that he and Bryant set off fourteen rods measuring across in four or five places from Barstow's line, and stuck quite a number of stakes in the snow to mark that line ; and that Bryant told him and two men, who were there cutting, not to cut higher than that line, stating that he had called on Farley several times to get him to join in a survey, that he knew of no bounds and did not wish to get within his bounds. George W. Johnson and Joseph Hammond state, that they were cutting there for Bryant, and were directed by him not to cut within a certain number of rods, not recollected, of Barstow's wall, and not to cut over on to the Farley strip.

From the testimony of these witnesses, without adverting to other circumstances, it appears, that Bryant has spoken of that strip of land as owned by Farley ; that he has conducted as he would be expected to do if he did not own it, and as he would not have been expected to do if he did own it. The result of the whole testimony, including his answer, fully authorizes the conclusion, that he must have known, that the twelve rod strip claimed by the plaintiff, either was not or was not intended to have been conveyed by the plaintiff to Harris.

It is also necessary to prove, that Turnbull and his wife are chargeable with the like knowledge, or that they are not purchasers for value. The contract for a conveyance appears to have been made between Turnbull and Bryant, while the conveyance was made to the wife of Turnbull. If the husband entered into possession of the land and continued to occupy it for nearly two years with a knowledge of the mistake, and the conveyance was then made to the wife for a consideration paid by her husband, her want of knowledge of the mistake will not be sufficient to prevent a decree, that the deeds should be reformed. For in such case, she does not present herself as a purchaser for value paid by her ; and the husband cannot avoid the effect of his knowledge by consenting to or ratifying the conveyance made to his wife.

Alexander Farnham testifies, that Turnbull stated to him a few months before he moved on to the farm, that he and Bryant talked of trading; that he would have liked the trade much better, if those three pieces had not been taken out of it; that Farley was pretty cunning in reserving that strip that had the most timber on it; that he should like to have had that strip on account of the timber on it.

Benjamin Chapman testifies, that during the summer of 1845 he was with Turnbull upon his farm at a place described as being about half the distance from the east to the west end of the twelve rod strip, and that he pointed to a thick growth of timber standing north of the tops of the trees cut for Stetson, and that he said to Turnbull, you have some handsome timber there, to which Turnbull replied, that is Farley's.

It does not appear, that Turnbull ever cut any trees upon that strip, or that he ever exercised any acts of ownership over it before this contest arose.

Without the testimony of Albert Chapman, objected to on account of the time and manner of taking it, and also because the deponent was not of sound mind, the other testimony considered in connexion with the attendant circumstances, is quite sufficient to overcome the answer.

The plaintiff will therefore be entitled to enter a decree, that a plain mistake was made in stating the length of the first line named in the description of the second tract of land conveyed in the deed from the plaintiff to Benjamin Harris, by stating it to be one hundred and eighty-two rods instead of one hundred and two rods; that the deed be reformed accordingly; that the other defendants are not purchasers for a valuable consideration without knowledge of that mistake; and that all the defendants be perpetually enjoined from claiming to own the tract of land excluded from the conveyance by a correction of that mistake, and from the exercise of any acts of ownership over the same, and from conveying or attempting to convey the same; and that the plaintiff recover his costs,

excluding from the taxation thereof all testimony not connect-
ed with the correction of that mistake.

NOTE.—TENNEY, J. being a relative of one of the parties, did not act in the
case.