BROWN v. RAPID TRANS. SALES CO.

Ohio Appeals, 8th Dist., Cuyahoga Co. .

No. 8002. Decided Mar. 12, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**CONTRACTS.—Real Estate. (510 L2).**
(150 W3a) A written contract for the purchase of real estate, signed by a man engaged in the purchase and sale of real estate for profit, will not be reformed or rescinded because it contains certain restrictions which, if he had read it, he would have discovered before signing.

Error to Common Pleas.

Judgment affirmed.

Wm. H. Chapman, Esq., Cleveland, for Brown.

Garfield, Cross, MacGregor, Daoust & Baldwin, Cleveland, for Rapid Trans. Sales Co.

STATEMENT OF FACTS.

The suit was brought to reform a certain writing, or in the event that the writing could not be reformed, to rescind the contract and recover back what money had been paid upon it.

Brown, the plaintiff, was a business man engaged more or less in the buying and selling of real property out of which to make a profit; Ryan was a sales agent for the Rapid Transit Land Company and his immediate superior was a man by the name of Morris. Ryan solicited Brown to buy a lot in an allotment owned by the Land Sales Co.

When Ryan proposed that Brown become a purchaser of land in this allotment, Brown said that he would not be interested in anything but apartment and business property and thereupon, after dickering, he agreed to take a certain lot upon which an apartment house, at least might be built. $100 was paid down by Brown to Ryan on that sale, but when that sale was reported to Morris, Ryan was told that that lot had already been sold and they could not sell it to Brown, whereupon Ryan called the attention of Brown to the lot in question in this lawsuit, but said the lot would be six or seven hundred dollars more in price than the one already referred to, and stated that that property could be used for business purposes and for an apartment house, and said nothing about any restrictions or anything else that would interfere with the use of the property as stated by Ryan.

Upon the strength of this, it is stated by Brown that he bought this lot in question for $4850.00, and the $100 paid upon the other lot was allowed upon the purchase price, and that together with $1100 was included in the $1200 which was paid upon the signing of the contract. A written memorandum was signed by Brown describing this lot in a brief way, but when the $1200 was paid, a contract in writing, which set forth all the terms, was signed by the Land Co. and by Brown. It is safe to say that the Land Co. had no knowledge of any of the representations made by Ryan or by Morris about what this lot could be used for, and that both Ryan and Morris were agents of the Land Co. to a limited extent only, and perhaps did not have power to bind the company with any representations they might have made.

At the time this contract was signed by the Land Co. and taken by Ryan to Brown, it was not read either by Ryan or Brown, although Brown could read and was not prevented from reading it in any way. This contract clearly, unequivocally and without any ambiguity sets forth the restrictions upon this lot and what it could be used for, and it precludes the building of any business or apartment house upon the lot. Brown took this contract, which was delivered to him and put it in his safety deposit box without reading it. Subsequently he made various payments until he paid in the neighborhood of $2,000 upon this property.

After the lapse of nearly two years, he brought an action against the Land Co. first, to reform his contract to conform to what he understood his contract to be from the representations made by Ryan, and if that could not be done, then to rescind the contract and recover back the consideration that he had parted with, on the ground that there were mis-

representations which induced him to part with the money.

## VICKERY, J.

The question then is this, and simply this: can a man who can read, who is not prevented from reading, who has ample time to read, who has signed a written contract which sets forth completely the restrictions and terms of the contract, and who pays money down on that contract, not only at that time but at other times, without ever having read it, and who does not know the contents of that contract until he seeks to dispose of the property mentioned in the contract, and then for the first time finds that what the agent represented to him was not as a matter of fact true,—the question is, I say, can a man under these circumstances, after that lapse of time, rescind the contract and recover back his money? The question has been answered a great many times in the courts of this state and other states, and the Supreme Court of the United States, and they have all been, so far as I know, to the contrary.

McAdams v. McAdams, 80 OS., 240.

Upton, Assignee, v. Tribilcock, 91 U.S. 45, 50.

Jackson v. Croy, 12 Johns., 427; Lies v. Stub, 6 Watts, 48; Farley v. Bryant, 32 Me. 474; Coffing v. Taylor, 16 Ill., 457; Stapylton v. Scott, 13 Va. 427; Alvanley v. Kinnaird, 2 Mac. & G. 7; Burgess v. Richardson, 29 Beav., 490.

Our attention has been called to a decision of this court in the case of Bowman v. Rapid Transit Land Co., Volume 31 Unreported Opinions Court of Appeals, page 440. That case was a failure of consideration by reason of the inducement having failed. Miss Bowman bought that property only upon the promise of these people to resell the property for her. There is nothing like that in this case. In the instant case it was an immediate sale, and the representations which were made, were fraudulent representations, if anything, for which perhaps an action at law might lie. Now the original contract itself, if these statements were made, contradicts that, and Mr. Brown could have easily discovered, before he paid his money, because the first $100 which he paid on the lot could have been recovered, and so all the money was paid voluntarily upon this contract which sets forth the terms, and these terms were different from those which it is claimed the agent represented, and they were within the means of knowledge of Mr. Brown before the contract was completed.

The whole question resolves itself down to the proposition: Can a man close his eyes and his ears to knowledge that could not have escaped him had he exercised ordinary care and diligence in reading the contract, and then subsequently after quite a period of time, have the contract rescinded? We do not think so. We think the authorities cited in the 80th Ohio St., supra, and other cases, are clearly to the contrary, and we think there ought to be a decree for the defendant in this action.

(Sullivan, PJ., concurs. Levine, J., not sitting.) ting.)