## Worrall's Accounts.

If the matter in dispute and object of a written agreement whether under seal or not, can be discovered, it will be construed so as to effect that object.

Where a suit has been compromised and a doubtful question settled, it will not be opened unless there has been fraud or imposition, especially where the agreement of compromise indicates an intention to end the matters in dispute.

Therefore a release of demands executed on the settlement of a family dispute will be construed according to the design and intent of the parties and not by technical expressions.

THIS was an appeal by the administrators from a decree of the Orphans' Court of *Delaware* county, in the matter of the account of Peter Worrall, guardian of Matilda Dilworth, late Worrall, as filed by Hannah Worrall and Walker Yarnall, administrators of said Peter Worrall, deceased.

This appeal was argued by

*Dillingham,* with whom was *Meredith,* for the appellants; and *Lewis,* contra.

The opinion of the Court was delivered by

HUSTON, J. — The testimony in this case seems to have been given as it happened to be picked up, without any idea of making the matter plain to those who never before heard of it. It turned out that the claim arose in the following way : About 1826 George Worrall was largely indebted, and he made a deed absolute on its face to his brother Peter Worrall for a house No. 23 North Second street. The consideration expressed was, that Peter should pay off a mortgage for £——, and perhaps something more. The deed was not shown to us, but stated, on both sides, to be an absolute deed; and Peter was put into the possession of the house, and received the rents until his death, in May 1831. George Worrall had only a life estate in this house, as it had been devised to his wife, who died before this deed : at his death it descended to his children. Soon after this conveyance, S. Richards obtained a large judgment against him, and other creditors pressing, he made an assignment for the benefit of his creditors. About this time

his brother Peter was appointed guardian of the estate of his children, who would seem to have had property independent of him.

The heirs of Peter Worrall, who knew nothing to the contrary, took possession of the house No. 23 North Second street, and received the rents after his death.   The children of George being all of age, obtained an assignment of Richards's judgment, and a power to sue out execution on it, and also an assignment from the assignee of George Worrall; and to June term 1834 brought an ejectment against the tenants of Peter's widow and children; which widow, as administratrix, and the guardian of his minor children, were admitted to defend as landlord.   The case was arbitrated, and a report in favour of the plaintiffs; and the defendants appealed, and the case was again in court for trial.   After this a compromise took place, which was reduced to writing.   The defendants gave up possession, and the heirs of George executed a release, which, after stating the action, the property and the parties, proceeded : " Now a compromise of all matters in dispute between the parties relative to the said house in Second street, in the city of Philadelphia, having been effected by a family arrangement between the parties, the defendants agree to surrender the property in dispute to the plaintiffs, and to pay the rents accrued and received by them since the 1st day of November 1834, to the plaintiffs; and we the said plaintiffs do by these presents for ourselves, our heirs, executors and assigns, remise, release and for ever discharge the defendants, and each and every one of them, their heirs, executors and administrators, of and from all manner of actions, causes of action, suits, debts, dues and demands at law and in equity which we may have against the said defendants, on account of said property, No. 23 North Second street, in the city of Philadelphia, and for or on account of the rents and profits of the same received by them previously to the 1st day of November 1834."   This release was signed and sealed by Richard S. Worrall, Horatio G. Worrall, Isaac S. Worrall and Charles Dilworth, (who during the pendency of the suit had married Matilda Worrall, the remaining child of George Worrall), and was dated the 19th of September 1835, and acknowledged same day before a justice of the peace of Chester county.

Two days after this the guardian and widow paid the rent, as agreed in the above compromise, and the children of George gave the following receipt: " Received, September 21, 1835, of Eli D. Peirce, guardian of Mary, Peter and Hannah Worrall, $182.13, in full of the rents or mesne profits of the house and premises No. 23 North Second street, Philadelphia, received since the 1st of November last, and in full of all demands against the heirs of Peter Worrall, deceased, on account of the rents of said premises."   This was signed, as the paper above, by all the parties to the above paper.   In 1838 Matilda Worrall, now Dilworth, by her husband Charles Dilworth, cited Hannah Worrall, the widow and adminis-

tratrix of Peter, to settle his account as guardian of said Matilda. An account was filed the 26th of August 1839, showing a small balance in favour of the guardian. This was excepted to, an auditor appointed, and a report charging Peter Worrall's estate with one-fourth (being Matilda's share) of the rents of the house No. 23 North Second street, from the date of George's deed to him till his death in May 1831, and interest thereon.

There were witnesses examined, and the deposition of G. Worrall, who is living in a distant county, was taken, and the testimony given by him before the arbitrators in the ejectment was proved from the notes taken by counsel, and the notes of other counsel not produced. In the deposition in this hearing, he refused to answer about the impending judgment of Richards being a reason for the deed to his brother. It was proved that before the arbitrators he testified that Peter had paid all the rents for the house in Second street to him or his orders, and had, a few days before his death, delivered to him all the orders and receipts, which he produced before the referees in the ejectment, but does not now know where they are. In short, a strong, and on the testimony given, a clear case of a fraudulent sale to defeat creditors was made out, and that no rents could be recovered by George or his children, nor the house, during George's life. The cause does not appear to have been put on that ground in the court below, and it was strongly urged on this court to send it back for a re-hearing; but we think this unnecessary. According to our view, the compromise, release and receipt bar the plaintiff from recovering.

There was a time when written instruments were construed by certain technical rules. I do not say this was wrong. When few men could write, and a professional man was employed to draw every writing, this strictness had some colour; but now that every man can write, and does write the receipts and releases which are required, there is, and has for a century been a rule, that if the matter in dispute can be clearly discovered, and the object of the agreement seen, the writing, whether under seal or not, shall, if it can be done, be construed to effect that intention. This rule was first applied to wills written when professional advice was not at hand; and it applies with equal force to any writing written by a mere layman; but it has been applied to solemn deeds drawn by eminent men, conveying property of great value. In *Dormer* v. *Fortescue,* a case which went through all the higher courts in England, and was finally decided in the House of Lords, Chief Justice WILLES, in delivering the unanimous opinion of the twelve judges, commences with some rules for the construction of deeds. That such construction shall be made that the end and design of the deeds should take effect, rather than the contrary. Another maxim is, that the principal thing in a deed is the end and design of the grantor. We have no power to insert words in a deed; but

we ought to construe the words so as to effect the intention of the grantor. The act of construing words so as to destroy the intent, may show the ingenuity of counsel, but is unbecoming in a Judge. 3 *Atk.* 131. Where two or more make an agreement, the word, parties, will be substituted for grantor. In *Shepherd's Touchstone*, from p. 87 through some following pages, we find some rules. Too much attention is not to be paid to the strict philological meaning of words, nor to their natural meaning, to prevent the simple intention of the parties from taking effect. All parts of the instrument are to be considered. In 2 *Black. Com.* 379, to effect the intent, the construction must be reasonable and according to common understanding. Where the intention is clear, too great attention is not to be given to the precise signification of words, &c. A release may be good without any consideration; and this has been a reason for limiting its effect. Here, the settlement of a suit is a good consideration. *Lies* v. *Stub*, (6 *Watts* 48). A deed, otherwise questionable or even invalid, may be supported when made to settle a family feud. *S. C.* and *Jourdan* v. *Jourdan*, (9 *S. & R.* 268).

Now let us apply these to this case. There was a dispute. The discussion not pleasant to these children of Peter or George. The success of the plaintiffs exceedingly doubtful, to say the best. Peter's heirs give up the title. Peter had been dead four years. The recovery of the property or the rents could not affect him; it only affected his widow and children. George's children, in consideration of getting the property and half the rent of the current year, release to the defendants, (Peter's widow and children), and "for ever discharge them from all manner of actions, causes of action, suits, debts, dues and demands at law and in equity, which we may have against the said defendants, on account of the property No. 23 North Second street, Philadelphia, and on account of the rents and profits received by them previously to the 1st of November 1834." Now, this claim is against them, and only against them, though pretended to be against their deceased father. The suit, claim or demand, is against them in substance, and the recovery is from them and their property. But it is said it is only for rents *received by them*, and does not extend to rents received by their father. Now, it took a lawyer to discover this; but we must not forget that George had just sworn that Peter had paid all the rents to him or his order—(this as proof of the trust)—and had also proved that Peter had given to him all the orders and receipts, and produced them before the referees, though they are not forthcoming now. On this proof, a report for the plaintiffs. There was then no need of a release for what Peter had received. But the receipt goes further—"Received from the guardian and widow, $182.38 in full of the rents or mesne profits of the house No. 23 North Second street, received since the 1st of November last;" but it did not stop here—it proceeds: "and in full of all

demands against the heirs of Peter Worrall, deceased, on account of the rents of said premises." Now, this is a demand against the heirs of Peter Worrall. It is repugnant and revolting to common sense to say it is not.. The counsel of defendant had admitted that perhaps all the facts were not brought distinctly before the Orphans' Court. That court seems to have considered the ejectment as decided in favour of the plaintiffs, and as conclusive that the conveyance by George was not fraudulent and void. The suit was pending; the investigation to come on in a court. Horatio Worrall, one of the plaintiffs, swore that he was the sole agent in that case, and he proposed and brought about the compromise; and though the docket shows appeal withdrawn, and judgment for the plaintiffs, the agreement shows it was a family arrangement— a compromise on a good and valuable consideration; and it binds all the children of George who signed, and George who swore he had no interest: and that agreement and release and receipt are not to be disposed of by technical constructions of words, different from the plain and common understanding of them, and, I may add, different from the intention of the children or George, or they would not have slept from 1834 till 1839.

Where a suit has been compromised, and a doubtful question settled, it shall in no case be opened unless there has been fraud or imposition. It is not enough that by loss of proof on one side, or discovery on the other, there now appears reason to believe one party can gain it. Where a cause involves matters which will reflect on a member or members of a family or families, it shall not be opened because some of the members, or all of one family, are reckless of the feelings of the rest; and in both cases, if the agreements or releases express the object to be to end the dispute, that intention shall be entirely carried into effect, if the words will bear that construction.

The decree reversed so far as it relates to the rent of the house No. 23 North Second street.