# Burkholder's Appeal.

A post-nuptial contract, the main object of which was the settlement of differences between husband and wife which had caused a temporary separation, is founded upon sufficient consideration; and after it has been fully executed by husband and wife during their lives, a provision therein in favor of the wife's issue by a former marriage, contingent upon the husband surviving his wife, and dying, will, after the happening of said contingency, be enforced in the settlement of the husband's estate, in the Orphans' Court.

[Burkholder's Appeal.]

January 14, 1884.  Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN AND CLARK, JJ.

APPEAL from the Orphans' Court of *Philadelphia county:*
Of July Term, 1883, No. 10.

Appeal by Martha Burkholder from a decree of said court,
dismissing her exceptions to the adjudication upon the audit
of the account of the administratrix of the estate of Richard
J. Rutter deceased.

Before the auditing Judge the following facts appeared:
The decedent, Richard J. Rutter, and his wife were married
about the year 1834.  Mrs. Rutter had a son by a former
marriage—David Brisben—and had an interest, under the
intestate laws, in the real estate of her former husband, which
had been determined to be the interest of $3000 for her life.
After her marriage with Mr. Rutter he received said interest
and used it as his own.  In 1849 Mr. and Mrs. Rutter had
differences and separated. · After living apart for a short time
they came together again, and, with David Brisben, executed
the following instrument:

Articles of Agreement made concluded and agreed upon by
and between Richard Rutter of Leacock Township in the
County of Lancaster of the first part and Julia Rutter wife of
said Richard of same place and her son David Brisben of
Salisbury Township in said County of the second part witness
that whereas differences lately happened between the said
Richard Rutter and Julia his wife which caused the said Julia
to leave her said husband and whereas the said Richard·
Rutter and Julia are desirous that all differences heretofore
existing between them shall be settled and compromised and
that they will again live together in union and harmony as
becomes man and wife and in consideration whereof and for
the purpose of avoiding future difficulties and dissensions
they have mutually agreed and by these presents do agree
that their respective property and estates shall be held and
enjoyed as follows to wit:—

The said Richard hereby covenants and agrees to and with
his wife Julia and her son David Brisben that in case the said
Julia shall die before the said Richard that then and in such
case upon the decease of the said Richard Rutter the admin-
istrators or assigns of the said Richard shall pay over grant
and convey the one-half of all his estate real and personal
unto the said David Brisben only child of the said Julia by a
former husband if he be then living and in case he be not
then living then to his child or children if any then living and
to the issue of any then dead *per stirpes* their heirs and
assigns in equal shares and parts and in default of any child
or issue of any deceased child then to the next of kin of the

said Julia their heirs and assigns according to the intestate laws. And the said Julia Rutter by the advice and approbation of her son David Brisben hereby covenants and agrees that the said Richard her husband shall receive and take for his own use the annual interest of the principal sum of three thousand dollars which is charged on and payable out of the real estate of her late husband Henry Brisben deceased during life as the said Richard has heretofore received the same so long as the said Richard and Julia shall live together. And the said parties do hereby mutually covenant and agree that in case any future separation of said Richard and Julia shall take place either by his leaving her or she leaving him that then and upon such separation the said Richard shall pay to said Julia the sum of five hundred dollars and thereafter suffer and permit the said Julia to take and receive annually the interest of the said sum of three thousand dollars payable out of the real estate of the said Henry Brisben deceased as aforesaid which shall be in full of her dower right and interest of and in his estate. And in case the said Julia will survive her husband the said Richard and they shall at the decease of the said Richard be living together then the estate of the said Richard shall pass and be distributed agreeably to the intestate laws.

In witness whereof the said parties to these presents have hereunto set their hands and seals this sixth day of August A. D. 1849.

Sealed and Delivered
   in the presence of

| | | |
|---|---|---|
| HENRY DICKENSON | RICHARD RUTTER | [SEAL] |
| J. W. LIGHTNER | JULIA RUTTER | [SEAL] |
| | DAVID BRISBEN | [SEAL] |

Acknowledged same day, and recorded at Lancaster in Record-Book N. vol. 7, page 66, on August 11th, 1849.

David Brisben died in 1852, leaving two children, Julia A. Bair and Maria Wallace, who are still living.

Mrs. Rutter lived amicably with her husband until her death, on April 7, 1876. Her husband died May 29, 1881, intestate.

Before the auditing Judge, the said Julia A. Bair and Maria Wallace, the children of David Brisben, deceased, claimed to be entitled, under the provisions of the above agreement, to one half the personal estate of the decedent, Richard J. Rutter, in the hands of the accountant. The personal representatives of the decedent, of whom Mrs. Martha Burkholder was one, objected to said claim on the grounds (1) that the

agreement upon which it was founded was a mere executory contract, and being without any consideration could not be enforced. (2) The agreement being a post-nuptial contract cannot avail the claimants who are volunteers.

The auditing Judge sustained the claim of Mrs. Bair and Mrs. Wallace. To this ruling Mrs Burkholder filed exceptions, which were dismissed by the Court, in an opinion by ASHMAN, J., and a decree was entered confirming the adjudication. Mrs. Burkholder thereupon took this appeal, assigning for error, inter alia, the ruling of the Court that said agreement was founded upon a sufficient consideration, and the decree of the Court.

*Robert H. McGrath* (*H. C. Brubaker* with him) for the appellant.

*S. Hepburn, Jr.,* and *J. B. Townsend* for the appellees.

Mr. Justice PAXSON delivered the opinion of the Court, February 4, 1884.

It was not alleged that the agreement between Richard Rutter, Julia Rutter, his wife, and David Brisben had been obtained from the said Richard Rutter by means of fraud or undue influence. It was resisted solely on the ground of want of consideration, and that being executory, it could not be enforced. The court below held that there was sufficient consideration, from which ruling this appeal was taken.

The agreement bears date the sixth day of August, A. D. 1849, and recites that "whereas differences lately happened between the said Richard Rutter and Julia, his wife, which caused the said Julia to leave her said husband, and whereas the said Richard Rutter and Julia are desirous that all differences heretofore existing between them shall be settled and compromised, and that they will again live together in union and harmony as becomes man and wife, and in consideration whereof, and for the purpose of avoiding further difficulties and dissensions they have mutually agreed and by these presents do agree that their respective property and estates shall be held and enjoyed as follows:" Then follow the covenants, which, so far as they are material, briefly stated are: 1st. That in case the said Richard shall survive the said Julia, his executors and administrators shall pay over one-half of all his estate to the said David Brisben, only child of the said Julia by a former husband, if he be then living, and in case he be not then living, then to his child or children, if any then living, and to the issue of any then dead, *per stirpes*, their heirs and assigns," &c. 2d. That the said Richard should

take for his own use (so long as they shall live together) the annual interest on the sum of $3,000, which was charged upon the real estate of her former husband in favor of the said Julia; and 3d. That in case of a future separation the said Richard shall pay to the said Julia the sum of $500, and permit her to receive the interest on the said sum of $3,000.

From the date of this agreement the parties lived together, and for anything that appears, harmoniously, until the death of Julia in 1876. Richard received the $180 per year due Julia from the estate of her former husband, up to 1876, amounting altogether, as stated by the court below, in round numbers, to $4,860. The estate of the said Richard, as appears by the adjudication, amounted to $4,968.81, which is but a trifle more than he received by his wife. It is also proper to say that at the date of the agreement there had been no children born of the marriage, and evidently none was contemplated; Julia had a son, the said David Brisben, by a former husband. David died in 1852, leaving two children, the present appellees, who claimed under the above recited agreement the one half of Richard Rutter's estate.

Without referring to the assignments of error in detail, I will consider the case as the learned counsel for the appellants have presented it. They say the agreement should not be enforced because, 1st. It is a mere executory contract without consideration; and, 2d. It is a post nuptial contract not making provision for wife or children, which is not sought to be enforced by the wife, but by volunteers who have given no consideration.

I will consider the last objection first. That it was a post nuptial contract is not material, as such contracts, where otherwise unobjectionable, may be enforced in this State through the medium of equity. Husband's Law of Married Women, 26. The objection that the agreement is not being enforced by the wife, but by a volunteer who gave no consideration, is plausible, but does not meet the requirements of the case. It must be remembered that the appellants are seeking to invoke the chancery powers of the Orphans' Court, and to strike down a solemn settlement of his property made by Richard Rutter, when in the full enjoyment of his faculties and without any suspicion of fraud. That settlement gave to the son of his wife a much less sum of money than Richard Rutter received from the estate of the father of that son. And the appellants who object to this are the collateral relatives of Richard, and are themselves mere volunteers.

Nor is it accurate to call this a mere executory contract. It is a contract executed so far as the wife is concerned. All that she was to give, her husband received; all that she was to do,

she has done. It remains but for the representatives of the husband to do what on his part he covenanted they should do after his death. With full performance on the part of the wife, and the death of both parties, rescission of the contract is impossible.

This brings us to the question of consideration. The agreement was under seal, which, according to all the authorities, imports a consideration. This throws the burden of proof upon those who attack it. No evidence was introduced in the court below to impeach it, but the appellants relied upon the agreement itself as showing want of consideration. They allege that the interest due Julia Rutter from the estate of her deceased husband, was vested in and absolutely belonged to her husband, the said Richard Rutter, and that the family "differences" which caused the separation and led to the agreement, were "personal and domestic, and had no reference to rights of property pending suits or disputed claims."

. Henry Brisben, the first husband of the said Julia, died prior to the Act of 1848; the agreement in question was executed in 1849. Richard Rutter had received the annual interest due his wife for several years, and the agreement provided that he should continue to receive it for his own use so long as they lived together. A number of authorities were cited as to the effect of the Act of 1848 upon this interest, or dower, as I shall call it for the purpose of convenience. The discussion of these authorities I do not consider necessary to this case, as there are other considerations which will be referred to later on, which fully sustain the agreement. Aside from this, whatever may have been the right of the husband to reduce into possession the annual payments of dower as they matured after the passage of the Act of 1848, it seems to me equally clear that he could treat it as the property of his wife, even after conversion, and that in such case equity would preserve her right of survivorship. Gochenaur's Estate, 11 Harris, 460. The agreement proves one of two things: either he recognized the dower as belonging to his wife, or it was one of the disputes between them which led to the separation. In either case there would be a consideration sufficient to support the agreement.

Upon the ground however that this was an agreement to settle family difficulties and disputes, we think it is unassailable. The settlement and compromise of doubtful and disputed rights has always been held to be a sufficient consideration to support a contract whether executed under seal or otherwise. Rice *v.* Bixler, 1 Watts & Serg., 445; Chamberlain *v.* McClurg, 8 Id., 31; Moon's Executors *v.* Hewson, 8 W. N. C., 197. And the law looks with equal favor upon agreements the object of

which is to promote domestic peace and harmony, where they are free from fraud or the suspicion of improper influence. "And family compromises, especially if they are made in good faith and with full disclosure, are favored in equity, and may be sustained by the court, albeit, perhaps, resting upon grounds which would not have been satisfactory if the transaction had occurred between strangers." Bispham's Equity, § 189. The same principle is distinctly recognized by many of our own cases, among which may be mentioned Share *v.* Anderson, 7 S. & R., 62; Barton *v.* Wells, 5 Wharton, 225; Smith *v.* Warden, 7 Harris, 430; Worrall's Accounts, 5 W. & S., 111; Ackla *v.* Ackla, 6 Barr, 232; Fulton *v.* Moore, 1 Casey, 476; Walworth *v.* Abel, 2 P. F. S., 370. It is said, however, that in the present case the differences were purely domestic; that no property rights were involved, and that it was the duty of the wife to return to her husband. This is assuming the whole case. And it is assuming it as against all its probabilities. The "differences" which caused the separation are not specified in the preamble of the agreement, but there is much upon the face of that instrument to show that rights of property were the foundation of the whole trouble. Then the position of the parties favors this view. The husband was receiving an income through his wife which, in their circumstances and for that day, was by no means inconsiderable. He was childless; the wife had a son living by the husband from whose estate that income was derived. It was natural for the wife to desire that some portion of the money her husband was thus receiving should go to her son in case her husband survived her. And this was the very thing that the agreement provided for. The object of that paper was to settle their differences and restore harmony. We have but to turn to the agreement and see what was settled to ascertain what was in dispute. We there find that the parties themselves declare that "for the purpose of avoiding future difficulties and dissensions they have mutually agreed, and by these presents do agree, that their respective property and estates shall be enjoyed and held as follows," etc. Here is their own statement that the differences referred to related to their respective property. How then can we say that the differences between this man and this woman were entirely domestic, and had no relations to questions of property?

Nor does it appear that the wife was in duty bound to return to her husband. This would be so had she left him without sufficient cause. If, however, the husband's conduct had been such that she was legally justified in leaving him, she would have the right to remain absent, and her agreement to return would be a sufficient consideration to support a contract. We

have the admission in the agreement in question that it was these differences between them "which caused the said Julia to leave her said husband." This impliedly leaves the blame at his door, and his contract for her return is such an admission of the sufficiency of the cause of her leaving as to throw the burden of proof upon those who assert the contrary.

No question arises upon that clause in the agreement providing for a subsequent separation. If we concede it to be against the policy of the law, it does not affect the case. No attempt was ever made to enforce it, and under the facts as they exist, no such attempt could have been made.

Richard Rutter never called the validity of this agreement in question. He enjoyed its benefits to the time of his death. The appellants are mere volunteers, and have no equity to set aside a contract which is not only free from fraud or any species of imposition, but which was evidently in the interests of domestic harmony and substantial justice.

> The decree is affirmed and the appeal dismissed at the costs of the appellants.