# MARTIN J. ANKENBAUER v. LEO ANKENBAUER, et al.

Middle Section.   November 22, 1927.

No petition for Certiorari was filed.

1. **Wills.  Family settlements.  A family settlement will be upheld by the courts.**

   Where members of a family executed valid instruments dividing between them property left under a will, held to constitute a family settlement which the court will uphold.

2. **Deeds.  Estates.  Vendee of a contingent remainder takes title against his vendor by estoppel on happenings of contingency.**

   A vendee, to whom has been conveyed the contingent remainder interest of a member of a class, in which is vested a remainder expectant upon the death of the life tenant, takes title against his vendor by estoppel, on the death of the life tenant.

3. **Appeal and error.  Chancellor's decree will be affirmed on appeal if it can be sustained on any ground.**

   If the decree is supported by the facts appearing in the record and the law applicable thereto, it will be affirmed, even though the appellate court does not concur in the reasons assigned by the trial court for its judgment.

4. **Deeds.  Estates.  Contingent remainder is assignable.**

   Where four sons were entitled to the remainder in certain land under the will of their mother, contingent upon their being alive at the death of their father, held that a deed executed by them before the death of their father conveying their interest in the land, upon the death of the father, leaving the sons surviving, was as effective to vest title in the grantee therein named as if made after the termination of the life estate.

5. **Wills.  Family agreements.  The settlement of a dispute or controversy is not essential to the validity of a family agreement.**

   There is a class of cases of family arrangements, relating to the settlement of property, in which there is no question of doubtful or disputed rights, and in regard to which a peculiar equity has been administered, in that they have been supported upon grounds which would hardly have been regarded as sufficient if the transaction had occurred between strangers.   In these cases the motive of the arrangements was to preserve the honor or peace of families or the family property.   When such a motive has appeared, the courts have not closely scrutinized the consideration.

6. **Estoppel.  Sworn statements in a former litigation constitute a "judicial estoppel."**

   In an action to determine plaintiff's interest in land where in a former suit he had testified that he executed a certain deed, held that his sworn testimony in that case constituted a judicial estoppel which prevented him from denying his execution of the deed in the instant case.

7. **Deeds.  Estates.  Evidence.  Evidence in the instant case held to show that deed created a life estate with the remainder over to children of the life tenant.**

   Where plaintiff's mother died leaving property to her husband for life with the remainder to plaintiff and his brothers and thereafter plaintiff

and his brothers and father entered into a family agreement and executed joint deeds whereby each child was given a certain tract of land for life not subject to his debts, with the remainder to his children, and the father was paid for his life estate, held that the deeds so executed were binding and plaintiff took a life estate thereunder.

Appeal from Part I, Chancery Court, Davidson County; Hon. R. T. Smith, Special Chancellor.

Affirmed.

Joseph H. Acklen, of Nashville, for appellant.

Paul L. Williams, Guardian ad litem for minors.

Burt Francis, of Nashville, for appellees.

FAW, P. J. The subject-matter of this suit, when the pleadings were filed and the issues made up, was the title to a tract of about forty-one acres of land in Davidson county, Tennessee. Pending the suit the land in controversy has been sold to the City of Nashville and the purchase price $9,500) has been paid into the registry of the chancery court. This was done pursuant to orders and decrees of the court in this cause, made with the consent of the adult parties and upon a report of the master, based on proof, that a sale of the property to the city at the price named would be manifestly to the interest of the owner or owners thereof, whether the issues were ultimately determined in favor of the complainant or the defendants.

The case was tried before the Honorable R. T. Smith, sitting as Special Chancellor in Part I of the chancery court of Davidson county, and the learned Special Chancellor adjudged and decreed that complainant Martin J. Ankenbauer had only a life estate in the property sold in the cause, and has only a life estate in the fund in the hands of the Clerk and Master as the result of the sale of said property. It was thereupon decreed that said fund be kept invested and the income paid to complainant Martin J. Ankenbauer during his life, and then (at the death of Martin J. Ankenbauer) be distributed under the terms of the deed of trust to John A. Ankenbauer, as trustee, registered in Book 64, page 472, of the Register's office of Davidson county, Tennessee.

The complainant Martin J. Ankenbauer has brought the case to this court by appeal, and is here insisting that the aforesaid decree of the chancery court was and is erroneous. Appellant contends that at the time he filed his bill in this case the title to the land in controversy was vested in him in fee simple, without limitation, and that he is the absolute owner of the aforesaid fund in the registry of the court representing the proceeds of the sale of said land.

For the appellees it is insisted that complainant had only a life estate in said land, and that upon his death the fund realized from

the sale of said land will belong to the children of complainant living at that time and to the issue of any of his children who may then be dead.

All of the children of the complainant (eight in number) and their descendants now in being are defendants to the bill in this case.

The learned Special Chancellor filed a written finding of facts and opinion, as follows:

"This suit was brought by Martin J. Ankenbauer against his children and grandchildren to have himself declared the owner in fee of a tract of land in Davidson county, Tennessee, or, in the alternative, to have the court accept an offer made by the City of Nashville to purchase the same. The city's offer was accepted by the court and the money has been paid into court, and the only question now to be determined is as to whether said Martin J. Ankenbauer is the absolute owner of the fund in court or is entitled to only a life estate therein.

"John Ankenbauer, father of Martin J. and three other sons, was born in Germany about 1820. He came to this country and settled in Hamilton county, Ohio, where he married Mary Ann Kemper. There they engaged in truck farming. They were industrious and accumulated some property. There were born four sons, George W. in 1845, Martin J. in 1850, B. J. A. in 1853, and John Adam in 1854. About 1873, the entire family moved to Davidson county, Tennessee.

"Mary Ann, wife of John Ankenbauer, bought a one hundred and thirty-five-acre tract of land in Thirteenth Civil District of Davidson county. This property was divided into four tracts, numbered one, two, three and four. Prior to their mother's death B. J. A. occupied tract No. 1, George E. tract No. 2, John Adam tract No. 3 and Martin J. tract No. 4. All four sons were married.

"In November, 1879, Mary Ann died testate, leaving a will executed January 20, 1868, and which was duly probated. This will, among other things, provided as follows:

"'I give and bequeath to my beloved husband, John Ankenbauer, all of my real and personal estate which is now or may be owned by me at my death . . . To have and to hold the same to him, my husband, John Ankenbauer, during his natural life, and I do hereby expressly declare that the property, real and personal, hereby bequeathed by me to my husband, John Ankenbauer, shall not be in any way disposed of by him, but shall be for his use and enjoyment during life, as above stated, and at his death, to be equally divided between my children who may survive him.'

"On January 1, 1880, John Ankenbauer, the husband, qualified as administrator, with the will annexed, of said Mary Ann Ankenbauer.

"Shortly thereafter the father and four sons had a conference which resulted in the following agreement, drafted in pencil by B. J. A. Ankenbauer:

" 'We the undersigned, agree to divide the homestead place as follows: George W. Ankenbauer and B. J. A. Ankenbauer taking Foster's estate, sixty-five acres. And Martin J. Ankenbauer and John A. Ankenbauer the G. W. Harding estate of seventy acres, as shown on the following plan:

" ' (Here follows plan)

" 'We also agree to give father $100 a year till his death, with the exception of Martin J. Ankenbauer who agrees to give $75 (seventy-five dollars). We also agree to give father full control of all other property outside of the homestead place, to do with as he see fit.'

"The father, John Ankenbauer, gave this agreement to H. F. Banks, his lawyer, to draw up the necessary paper. In accordance with instructions, the following partition deed was executed and registered on February 19, 1880:

" 'This indenture witnesseth, that by the will of Mary Ann Ankenbauer, which is registered in Will Book "R," page 569, of the county of Davidson and State of Tennessee, certain property is bequeathed to John Ankenbauer for and during his life with the remainder to such of the children of testatrix as might survive him, that the children of testatrix now living, all of whom are adults, B. J. A. Ankenbauer, John A. Ankenbauer, George William Ankenbauer and Martin J. Ankenbauer, have agreed with the said John Ankenbauer, husband of the said Mary Ann Ankenbauer, deceased, to purchase his life estate, and to divide among themselves the real estate known as the home place, consisting of lots twelve and thirteen in Beal Bosley plat, found in the Register's office for Davidson county, Book 38, pages 431, 432 and 433, it being the same land conveyed to Mary Ann Ankenbauer by deeds of G. W. Harding and Joseph Foster and wife, and found in Book 38, page 436, and Book 55, page 123, in said Register's office, containing in all about 135 acres, that the above-named children each agree to pay the said John Ankenbauer for and during his life, the sum of $100 per year, except Martin J. Ankenbauer, who agrees to pay only the sum of $75 per year, payable on the first day of January of each and every year after this date, the said John Ankenbauer shall live, and in consideration whereof the said John releases and quitclaims to the said above-named children all of his right and

interest in said above-described land.    That the above-named
children, having had the said land divided into four lots, known
as Lots Nos. 1, 2, 3 and 4 in the plat hereto annexed and made
a part of this agreement, and having agreed among themselves
that Lot No. 1 should be the share of B. J. A. Ankenbauer, Lot
No. 2 should be the share of George W. Ankenbauer, Lot No. 3
should be the share of John A. Ankenbauer, and that Lot No.
4 should be the share of Martin J. Ankenbauer :

" 'It is also hereby agreed that the said above-named children
will, as soon as practicable, exchange deeds vesting and divesting
title in accordance with the above allotment, and it is distinct-
ly understood between all parties to this instrument that a lien
is hereby retained upon all and each lot of land for the annual
payment to be made to the said John Ankenbauer, as aforesaid.'

"As above stated, this paper is signed by the father and the
four sons, and is acknowledged by all of them on February 19,
1880, by C. H. Eastman, Deputy Clerk of the county court of
Davidson county, Tennessee.

"At the same time, that is, on February 19, 1880, the four
sons executed and acknowledged a power of attorney to their
father to sell the property in Ohio belonging to their mother
and mentioned in her will.

"On the same date, at the instance of the father, four papers,
the so-called trust deeds, were drawn up by said H. F. Banks, all
similar in character, of which the one seeking to deal with the
property of Martin J., Lot No. 4, was as follows:

" 'Know all men by these presents, that for and in consider-
ation of an agreement entered into between the parties to this
conveyance and John Ankenbauer, which is registered in Book
No. 64, page 300 and 301 of the Register's office for Davidson
county, Tennessee, and the further consideration of $1 to them
paid by John Ankenbauer, the receipt of which is hereby
acknowledged, they have released and hereby quitclaim to the
said John Ankenbauer, his heirs and assigns, all the right, title
and interest in and to Lot No. 4 in the plan registered with the
agreement hereinbefore referred to, and which is bounded as
follows :

" ' (Describing property)

" 'Containing, by estimation, forty-one acres, more or less,
but this conveyance is made in trust, that is to say, the said
John A. Ankenbauer, trustee, will permit Martin J. Ankenbauer
and his wife, Mena, and his children to occupy and enjoy the
said land as a home for them all, free from the debts and liabil-
ities, present and future, of the said Martin J. Ankenbauer, and
during the life of the said Martin J. Ankenbauer and his wife,

Mena, and at the death of the survivor, the same shall descend to the children of the said Martin J. Ankenbauer, and to the issue of such as may be dead.'

"This paper is signed by B. J. A. Ankenbauer, J. A. Ankenbauer and G. W. Ankenbauer, and is by them acknowledged before C. H. Eastman, Deputy Clerk of the county court of Davidson county, Tennessee.

"All of the brothers signed the trust deeds to each other, Martin J. signing the trust deeds to B. J. A., John A. and George W., Martin J. also acknowledged all of these trust deeds before Mr. Eastman, as such Deputy Clerk.

"These four trust deeds were not registered until March 27, 1880. As some question is hereafter made in this suit as to the reason for this later registration, it may be suggested that the partition deed had to be registered before the book and page of its registration could be known and placed in the four trust deeds.

"When John Ankenbauer found that he could not sell the Ohio property under the power of attorney given him by his four sons on February 19, 1880, because their wives did not join therein, he had his sons and their wives to execute, on August 1, 1882, an absolute deed to the Ohio property.

"No family discussions appear to have arisen until John Ankenbauer, the father, married his second wife, Mary C., at Chattanooga, Tennessee, on April 19, 1882. Thereafter, the sons believed that their stepmother was seeking to acquire all the property for herself. Accordingly, on October 12, 1883, Martin J., John A. and B. J. A. Ankenbauer filed a bill in the Hamilton County Pleas Court of Ohio, to set aside the deed they had given their father to the Ohio property. This started a litigation that lasted some six years.

"On December 23, 1883, the father, John Ankenbauer, filed a bill in the chancery court of Davidson county, Tennessee, against all four sons, entitled John Ankenbauer v. B. J. A. Ankenbauer and others, Rule Number 11044, to collect rents claimed to be due him, and in which he asked to have the partition deed and the trust deeds hereinbefore mentioned set aside so that he might be restored to his life estate in the property which he had parted with under the partition deed executed and registered February 19, 1880.

"On January 18, 1884, B. J. A. Ankenbauer and his three brothers filed their bill in the chancery court here, Rule Number 11070, against their father, John Ankenbauer, and his wife, Mary C., in which they sought a construction of the will of

their mother, Mary Ann Ankenbauer, and also on accounting from their father as her administrator, with the will annexed.

"On July 14, 1885, the four sons filed another bill, entitled T. W. Wrenne, receiver, v. John Ankenbauer and others, Rule No. 11832, which later suit was based upon the decision in favor of the sons in the former suit, No. 11070.

"As above stated, the suit of B. J. A. Ankenbauer and his three brothers against their father, John Ankenbauer, Rule No. 11070, was filed for an accounting against their father as administrator with the will annexed, and also for a construction of the will of Mary Ann Ankenbauer. In this suit, judgment for $6615 was rendered in favor of the sons against their father, and a construction was placed by the court upon the will of said Mary Ann Ankenbauer. This construction is as follows:

"'Proceeding to construe the will, the court is of opinion, and so orders, adjudges and decrees that by its terms all the property of the said Mary Ann, real and personal, of which she died seized and possessed, was left to defendant John for his use and enjoyment during his natural life, but that it should not be disposed of by him in any way; with the remainder, at his death, to the children of him, the said John, and her the said Mary Ann, who may survive him. From the pleadings and the proof, it appears to the court that the complainants B. J. A., George W., Martin J. and John Ankenbauer, are the remaindermen, and the court orders, adjudged and decrees accordingly that those of them who may survive him at the time of his death will be entitled to equal shares in all of said property of which the said Mary Ann died seized and possessed.'

"All of said sons survived their father.

"In the suit brought by said John Ankenbauer against his four sons for the collection of rents which he claimed were due him from them, a decree was given him against two of his sons for such rents, but not against the other two, who were held to have paid their rents to date. Therefore, in the suit brought by the sons against him, entitled Thomas W. Wrenne, receiver, and others, v. John Ankenbauer and others, which was brought to collect the judgment given against said John Ankenbauer in the case of B. J. A. Ankenbauer and others, v. John Ankenbauer, it was sought to set off the decree rendered against said two sons against the decree rendered in favor of the sons against the father in the case of B. J. A. Ankenbauer and others, v. John Ankenbauer.

"The following allegations were made in said suit of Thomas W. Wrenne, receiver, and others, v. John Ankenbauer and others, by the four sons, and their bill was sworn to by all of them:

" 'Complainants further show to the court that defendant John, on the 20th day of December, 1883, filed a bill in this court, being 11044 of the Rules, to enforce the lien for rents on certain lands agreed to be paid by complainants B. J. A., John A., Martin J. and George W. Ankenbauer, as more fully appears by deeds . . . recorded in Book 64, pages 300, 471, 470, 471, 472 O. D. C. R.

" 'The Honorable court rendered a decree on the 8th day of July, 1885, entered in Book 21, page 256, against complainant John A. for $436 and his part of the costs. And the court ordered that on the failure of complainant John A. to pay, that part of the land to him allotted and conveyed in trust to his children after his death, is to be sold in satisfaction of the decree.

" 'And by the same decree defendant John recovered against complainant Martin J. the sum of $327 and his part of the costs, and it was ordered that on the failure to pay, that part of the land allotted to complainant Martin J. and in trust conveyed to his children after his death, be sold.'

"In the case of B. J. A. Akenbauer and others, v. John Ankenbauer, the deposition of Martin J. Ankenbauer is taken, and in his cross-examination appears the following:

" 'Q. 13. Did you not first sign a power of attorney and then a deed to the Ohio property; then the paper heretofore spoken of in the county court Clerk's office of Davidson county, Tennessee; then deeds to your brothers to the land in Tennessee conveyed them by your father? A. I first signed the power of attorney. I did not sign the deed to the Ohio property. I did not sign any paper in the Clerk's office that was shown to me the other day. Yes, sir, I signed the three deeds to my brothers to the Tennessee property.'

"This deposition was given July 29, 1884.

"John Ankenbauer died on September 22, 1885.

"After his death and the sale of his property in payment of the judgment rendered against him in the cases of B. J. A. Ankenbauer, and others, v. John Ankenbauer, and Thomas W. Wrenne, Receiver, and others, v. John Ankenbauer and others, nothing further happened until May 5, 1925. During the period between said two dates, said property was occupied by said Martin J. Ankenbauer and his wife and children. On said May 5, 1925, however, an offer for said Lot No. 4 was made by the City of Nashville. This offer was accepted by said Martin J. Ankenbauer and an abstract of title to this property was furnished to the city. The city attorney was doubtful as to whether said Martin J. Ankenbauer had a fee-simple title to

said property, and suggested that a policy of insurance guaranteeing said title be obtained. This policy could not be obtained, and so the bill in this case was filed, first to ascertain what title said Martin J. Ankenbauer had to said property, and in case he was not the owner of a fee-simple estate therein, to have the same sold on the ground that it was for the manifest interest of all parties interested therein that it be done.

"This bill, after setting out the will of said Mary Ann Ankenbauer, the partition deed aforesaid, and the trust deeds aforesaid, in referring to said trust deed, states:

" 'Complainant did not sign this paper; did not authorize its execution, and did not receive or register it, and has never, either by word, act or deed, consented that it should affect the title to his property, and now he prays the court that it be removed as a cloud upon his title.'

"Further along the bill states:

" 'Complainant did not sign any of the papers of February 19, 1880, which are null and void.'

"The bill also states that all of the adult defendants desire that the proposition or offer of purchase of the city be ratified.

"The bill then prays for the proper relief, and is sworn to by the complainant.

"Two answers to this bill are filed by the adult defendants. In the answer of two of them they say that the complainant was to get his tract of land under the terms of his mother's will, subject to the life estate of his father, and they approve of the sale of the property to the City of Nashville, and admit that the fund thus realized is the property of the complainant, and that he is the owner in fee of said property. The other adult defendants say as follows:

" 'They deny that complainant became the owner in fee simple of said Lot No. 4 by said deed of partition and agreement, with the plan of subdivision, and they deny that complainant became the owner in fee simple of any part of said property. They state there was a family settlement and agreement between complainant and his brothers, under which it was agreed, among all the parties in interest to said family settlement, that the entire property would be divided up in trust for homes for complainant and his brothers during their lives, with remainder to the children of each, and the descendants of children who might survive them; and they further say that complainant attempted to carry out this family settlement and accepted onefourth of said property in trust for one of his brothers and acted as such trustee. That all four of the brothers attempted to carry out and effectuate this family settlement in 1880 by

the exchange of certain instruments and papers, and that all of the parties have acted under said original settlement for forty-five years. That complainant agreed with his three brothers that he would accept one-fourth of the property in question in trust for one of his brothers for life, with the remainder to his brother's issue, and would faithfully carry out said trust, and did undertake to carry out its provisions in accordance with said family settlement and agreement. That each of the brothers did the same thing, in fact, the family settlement and agreement was made among the four brothers and John Ankenbauer, the complainant's father, during his lifetime. That the understanding was that the property should be held in trust for the children of said John Ankenbauer during their lives, or his grandchildren or the issue of his children after the death of his respective sons, was part of the consideration which induced the said John Ankenbauer in said family settlement to agree to release his life estate in return for certain specified annuities. That this whole agreement was made a valid family settlement, and the various deeds and papers executed by the parties in interest were merely attempts to carry out and effectuate the said family settlement . . . It is denied that all the adult defendants desire this sale to be consummated. Some of these defendants favor the proposed sale, while others oppose it. However, all of these defendants are willing that the sale be made, provided the fund derived therefrom be placed in the hands of the Clerk and Master for investment, to be held subject to their remainder interests, if any such they have.'

"From the foregoing, it is plain that Martin J. Ankenbauer had only a life estate in the property sold in this cause, and has only a life estate in the fund derived from such a sale unless he can show that the various instruments signed by himself, his father and brothers are not good and valid instruments. If these instruments had not been executed, he would have had, under the will of his mother, a fee-simple estate in said tract of land upon the death of his father. These instruments, if valid, constitute a family settlement which the courts will uphold. Trigg v. Read, 5 Humph., 528, 545; Williams v. Sneed, 3 Cold., 533, 541; Boyd v. Robinson, 9 Pickle, 1, 26.

"Martin J. attempts to set aside these instruments, and especially the one covering the property sold in this cause, in the following way:

"1. He says that the title of his brothers and himself, under his mother's will, as construed by this court, was a contingent one, dependent upon their surviving their father, and that, as the deed of partition and the deeds of trust were made during

the life of the father, they conveyed nothing. If any of the sons had died during the life of the father this would have been true as to them, but they all survived him. It has been decided in Nichols v. Guthrie, 1 Cates, 536, 542, that a vendee, to whom has been conveyed the contingent remainder interest of a number of a class, in which is vested a remainder expectant upon the death of the life tenant, takes title against his vendor by estoppel, on the death of the life tenant.

"Therefore, upon their father's death, each of the deeds of trust conveyed an absolute title to the trustee named therein.

"2. He says that he did not sign any of the conveyances dated February 19, 1880. There is a great deal of proof taken for and against this contention, in which is included the depositions of four handwritings experts. Yet, it is shown that about four years, after the execution of these instruments, Martin J. Ankenbauer himself testified in the case of B. J. A. Ankenbauer and others, v. John Ankenbauer and others: 'Yes, sir, I signed the three deeds to my brothers to the Tennessee property.'

"Martin J. says that he did not sign the deed to John A. Ankenbauer who was trustee for the property sold in this case. The deed does not show that it was signed by him, and it was not, of course, necessary for him to sign it. It is shown, however, that he acknowledged the partition deed and also the three deeds of trust to his brothers; and it is certain that his father and brothers would not have conveyed him their interests in the partition deed if he had not conveyed his to them.

"He says that he has done nothing to recognize the deeds of trust or to take advantage of the benefits contained in the deed of John A. Ankenbauer covering the property sold in this suit. And yet, in the case of Thomas W. Wrenne, Receiver, and others, v. John Ankenbauer and others, he says in a sworn bill:

"'Complainants further show to the court that defendant John, on the 20th day of December, 1883, filed a bill in this court, being 11044 of the Rules, to enforce the lien for rents on certain lands agreed to be paid by complainants B. J. A., John A., Martin J. and George W. Ankenbauer, as more fully appears by deeds recorded in Book 64, pages 300, 470, 471, 472, R. O. D. C.'

"The deed recorded in Book 64, page 472, covers the property sold in this cause, and which has been occupied for years by Martin J. Ankenbauer and his family.

"This sworn bill also says:

"The Honorable court rendered a decree on the 8th day of July, 1885, entered in Book 21, page 256, against complainant John A. for $436 and his part of the costs. And the court ordered that on the failure of complainant John A. to pay, that part of the land to him allotted and conveyed in trust to his children after his death, is to be sold in satisfaction of the decree.

" 'And by the same decree defendant John recovered against complainant Martin J. the sum of $327 and his part of the costs, and it was ordered that on the failure to pay, that part of the land allotted to complainant Martin J. and in trust conveyed to his children after his death, be sold.'

"It will be noticed that the four deeds of trust were made as follows: To George W. for B. J. A., to B. J. A. for George W., to John A. for Martin J. and Martin J. for John A.

"There is nothing to show that any of these parties dissented or made any objection to any of these deeds until Martin J. brings up the question in this suit. It is shown that Martin J. has married a second time.

"On account of the statements in his deposition and bill aforesaid, the complainant has estopped himself from making his second and third contentions. McEwen v. Jenks, 6 Lea, 289; Watterson v. Lyons, 9 Lea, 566.

"It is therefore the judgment of this court that Martin J. Ankenbauer had only a life estate in the property sold in this court, and has only a life estate in the funds in the hands of the Clerk and Master. This fund will be kept invested, and the income paid over to said Martin J. Ankenbauer during his life, and the fund will then be distributed under the terms of the deed of trust to John A. Ankenbauer, as trustee, registered in Book 64, page 472, of the Register's office of this county.

"The costs of this cause will be paid out of the fund in the hands of the Clerk and Master.

"ROBERT T. SMITH,

"Special Chancellor."

In this court the appellant has tendered nine assignments of error. The fourth assignment is that the Chancellor erred in holding "that Martin J. Ankenbauer had only a life estate in the property sold in this court and has only a life estate in the fund in the hands of the Clerk and Master." This is the only assignment of error which applies directly to the decree of the chancery court. The remaining assignments, except the ninth, purport to challenge certain findings (in some instances findings of fact and in others conclusions of law) contained in the Chancellor's written opinion filed in the record. We have alluded to the state of the assignments of error, as

just indicated, for the reason that assignments of error which complain only of the Chancellor's opinion may or may not be material in determining whether or not the decree should be affirmed, for the reason that if the decree is supported by the facts appearing in the record and the law applicable thereto, it will be affirmed, even though the appellate court does not concur in the reasons assigned by the trial court for its judgment. Terrell v. Murray, 2 Yerg., 384, 390; Railway Co. v. Wilson, 90 Tenn., 271, 16 S. W., 613; Chambers v. Chambers, 92 Tenn., 707, 714, 23 S. W., 67; Sheafer v. Mitchel, 109 Tenn., 181, 183, 71 S. W., 86; Brooks v. Paper Co., 94 Tenn., 701, 705, 31 S. W., 160. However, in the course of this opinion we shall state our views with respect to the several assignments of error in this case.

Although, under the will of complainant's mother, neither the complainant nor anyone of his three brothers took a vested interest in the estate devised unless and until he survived his father, we agree with the Special Chancellor that upon the death of the father leaving the four sons surviving, the deeds of conveyance theretofore executed by the remaindermen became as effective to vest title in the grantees therein named as if made after the termination of the life estate. The interests which the contingent remaindermen took upon the death of their mother, the testatrix, were assignable; and their conveyances of the land devised operated by way of estoppel to pass the interests therein which thereafter became vested upon the death of their father, the life tenant. Nichols v. Guthrie, 109 Tenn., 535, 540, 542, 73 S. W. 107; Bruce v. Goodbar, 104 Tenn., 638, 642-3, 58 S. W., 282; King v. Guild, 2 Tenn. Chy. App. R., 190, 195.

We also concur in the finding of the Special Chancellor that the partition deed and the four trust deeds of February 19, 1880, were executed for the purpose of consummating a family arrangement agreed upon by all the parties thereto in a conference or conferences between John Ankenbauer and his four sons. "Family arrangements" frequently—in fact, we think, in a great majority of instances—involve a compromise and settlement of doubtful rights or family disputes, or both, concerning property rights. In the case here under investigation it does not appear that there was any doubt or any dispute between the parties concerning their respective rights in the premises at the time they entered into the "family arrangements." But the settlement of a dispute or controversy is not essential to the validity of such an arrangement. In the instance now before us the obvious purpose of the execution of the four trust deeds was to preserve the family property as a home and means of livelihood for the four "Ankenbauer boys" and their respective families, and thus protect them against their own improvidence or financial misfortunes. There is proof in the record tending to show

that such was the motivating cause of the execution of the four trust deeds, but, if there had been no proof on the subject, the circumstances surrounding their execution would raise such an inference.

In the case of Royal Society of Good Fellows v. Campbell (R. I.), 13 L. R. A., 601, 604, it is said:

"There is a class of cases of family arrangements, relating to the settlement of property, in which there is no question of doubtful or disputed rights, and in regard to which a peculiar equity has been administered, in that they have been supported upon grounds which would hardly have been regarded as sufficient if the transaction had occurred between strangers. In these cases the motive of the arrangements was to preserve the honor or peace of families or the family property. When such a motive has appeared, the courts have not closely scrutinized the consideration. Trigg v. Read, 5 Humph., 529, 546; Burkholder's App., 105 Pa., 31; Wilen's App. Id., 121; Walworth v. Abel, 52 Pa., 370; Farnsworth v. Dinsmore, 2 Swan, 38; Williams v. Williams, L. R., 2 Ch. App., 294, 304; Houghton v. Houghton, 15 Beav., 278; Wycherley v. Wycherley, 2 Eden, 175; Frank v. Frank, 1 Ch. Cas., 84; Stapilton v. Stapilton, 1 Atk., 2; Pullen v. Ready, 2 Atk., 587; Cory v. Cory, 1 Ves. Sr., 19; Head v. Godlee, Johns. V. C., 536, 569."

In the same opinion, the Rhode Island court quotes from Houghton v. Houghton, 15 Beav., 278, 300, as follows:

"If the transaction is one which tends to the peace and security of the family, to the avoiding of family disputes and litigation, or to the preservation of the family property, the principles by which such transactions must be tried are not those applicable to dealings between strangers, but such as upon the most comprehensive experience have found to be most for the interest of families."

And again, in Royal Society of Good Fellow v. Campbell, supra, the court quotes from the opinion of Lord Justice Turner in William v. Williams, L. R., 2 Ch. App., 294, as follows:

"Nor do I think there was any want of consideration. The vice-Chancellor has, and I think correctly, rested this part of the case upon the footing of the cases as to family arrangements. They extend, as I apprehend, much further than is contended for on the part of the appellant, and apply, as I conceive, not merely to cases in which arrangements are made between members of a family for the preservation of its peace, but to cases in which arrangements are made between them for the preservation of its property."

We also agree with the Special Chancellor in his conclusion that complainant Martin J. Ankenbauer is estopped, by his deposition and by the averments of his sworn bill in the case of Thos. W. Wrenne, Receiver, and others, v. John Ankenbauer and others, to deny that he joined in the execution of three of the trust deeds in

question, and that the land allotted to complainant in the partition was "in trust conveyed to his children after his death."

Such sworn statements in a former litigation, either in a pleading or a deposition, constitute a "judicial estoppel"—a character of estoppel which is based on public policy and which, in this case, precludes complainant from setting up rights contrary to his aforesaid sworn statements in the former litigation, although the present defendants were not parties to the former suit and did not know of same until the present suit was instituted. Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 647, 266 S. W., 313, and cases there cited.

It is not shown that the sworn statements of complainant which form the basis of the judicial estoppel claimed in this case were made inconsiderately or from lack of knowledge of the facts.

We are of the opinion that, for the reasons we have stated, the decree of the chancery court must be affirmed. We have given careful consideration to each and all of the appellant's assignments of error, which are as follows:

"The Special Chancellor erred:

"1. In holding that the paper, so-called trust deed, which conveyed Martin J. Ankenbauer's property to John A. Ankenbauer, trustee, though not signed by Martin J., was nevertheless, a valid conveyance, and that 'it was not, of course, necessary for him (Martin J.) to sign it.' (Tr., 359.)

"2. In holding that, 'at the instance of the father, four so-called trust deeds were drawn by H. F. Banks,' and that these and the other instruments likewise drawn at the instance of John Ankenbauer, the father, were valid instruments and constituted a family settlement. (Tr., 349-358.)

"3. In holding that 'a decree on the 8th day of July, 1885, entered in Book 21, page 256, in the case of John Ankenbauer v. B. J. A. Ankenbauer et al., Rule No. 11044 (2 Tr., 233-236), declared a lien upon, and directed sold 'that part of the land allotted to complainant Martin J., and in trust conveyed to his children after his death.' (Tr., 353.)

"4. In holding 'that Martin J. Ankenbauer had only a life estate in the property sold in this court, and has only a life estate in the fund in the hands of the Clerk and Master.' (Tr., 357.)

"5. In holding that 'upon their father's death, each of the deeds of trust conveyed an absolute title to the trustee named therein.' (Tr., 358.)

"6. In holding that 'it is certain that his father and brothers would not have conveyed their interests in the partition deed if he (Martin J.) had not conveyed his to them.' (Tr., 359.)

"7. In holding that 'there is nothing to show that any of these parties dissented or made any objection to any of these deeds until Martin J. brings up the question in this suit. (Tr., 360.)

"8. In holding that Martin J. Ankenbauer signed the so-called trust deeds to his three brothers, and that 'on account of the statements in his deposition and bill aforesaid, the complainant (Martin J.) has estopped himself from making his second and third contentions.' (Tr., 361.)

"9. In not holding that the decree in the chancery court of July 15, 1885, subsequently affirmed by the Supreme Court, which decreed that 'all the property of the said Mary Ann, real and personal, etc., of which she died seized, and possessed, was left to defendant John, for his use and enjoyment, during his natural life, but that it should not be disposed of by him in any way, with the remainder at his death of the children of him, the said John, and her, the said Mary Ann, who may survive him.' 'That those of them who may survive him at the time of his death, will be entitled to equal shares in all of said property, of which the said Mary Ann died seized and possessed,' precluded any disposition whatsoever of the property during the lifetime of the said John Ankenbauer. (Tr., 352.)''

The citation, under each assignment, to a page of the transcript, refers to a page of the written opinion of the Special Chancellor as it appears in the record.

Barring a few observations to be presently made, we think that our findings and conclusions already stated afford a sufficient answer to all of the appellant's assignments of error.

It is seen that there is no assertion in the assignments of error that the "family settlement" and the instruments executed pursuant thereto were procured by fraud and therefore invalid; but it is earnestly pressed in the brief for appellant that they were procured by fraud perpetrated on complainant by his father, John Ankenbauer.

This charge of fraud, so far as it affects the five instruments executed on February 19, 1880, to carry out the terms of the "family arrangement," was first made by complainant in the bill filed in this case about forty-five years after the instruments were executed and registered. In neither of the four lawsuits between complainant and his brothers on the one side and their father on the other side, mentioned in the Chancellor's opinion, was it sought to set aside either of the instruments of February 19, 1880, except that in the suit brought by John Ankenbauer, the father, against his sons, in 1883, John Ankenbauer sought, as alternative relief, to set aside said instruments, and this was resisted by the defendants in that case, including the present complainant, Martin J.

So far as appears from the record, or is suggested by the circumstances, complainant's father could have had no motive of self-interest to promote by advising and counseling the execution of the four trust deeds, or either of them. In his conveyance of his life estate to his sons, John Ankenbauer expressly retained a lien to secure the rents which were to be paid to him by his sons as the consideration for his conveyance (which lien was sustained and enforced by the chancery court in the case of John Ankenbauer v. B. J. A. Ankenbauer et al brought in 1883), and the execution of the trust deeds by, and between his sons neither strengthened nor impaired his security. We find no basis in the record for a finding that the trust deeds are void for fraud in their procurement.

In support of his third assignment of error, supra, appellant says that there are no such words in the decree of July 8, 1885, as *"and in trust conveyed to his children after his death,"* which are quoted and underscored by the Special Chancellor in his opinion. This is true. Appellant's criticism is based upon a misunderstanding of the Chancellor's opinion. In that part of the opinion to which the third assignment is directed, the Chancellor was not quoting from the decree of July 8, 1885, but was quoting (correctly) from the complainant's bill in the case of Thos. W. Wrenne, Receiver, v. John Ankenbauer et al., to which bill complainant Martin J. Ankenbauer made oath.

In support of the seventh assignment of error, supra, we are referred to that part of the testimony of complainant to the effect that he had not taken steps (before filing the bill in the present case) to set aside the trust deed because in 1889 he consulted his lawyer, Mr. John Ruhm, who told him that the trust deed was "no good" and didn't affect his property; that the court had already decided that the property could not be divided until after his father's death, and that he need pay no attention to it.

This statement of complainant is discredited by the fact that the bill in the case of Thos. W. Wrenne, Receiver, v. John Ankenbauer et al., which was signed by John Ruhm, solicitor, and to which complainant Martin J. Ankenbauer made oath, recognized the validity of the trust deed by the averments quoted in the opinion of the Special Chancellor, supra.

In response to the ninth assignment of error, supra, it is sufficient to say that the suit of B. J. A. Ankenbauer et al., v. John Ankenbauer et al. was brought by the four sons of John Ankenbauer against their father and his second wife to obtain an accounting from him of the personal estate of his deceased wife which had gone into his hands as administrator cum testamento annexo, and the decree mentioned in the ninth assignment as construing the will of Mary Ann Ankenbauer was rendered in that case, and neither the title to the land in-

volved in the present case nor the validity of the instruments here in question were involved in that case. The bill in the case of Thos. W. Wrenne, Receiver, v. John Ankenbauer et al. was filed for the purpose of setting aside an alleged fraudulent conveyance to a tract of land by complainant's father, which, it was alleged, had been made to defeat the collection of the recovery granted to complainant Martin J. and his brothers by the decree mentioned in the ninth assignment of error, and it is quite clear that the complainant's eminent counsel, Honorable John Ruhm (now deceased), who drew the bill in the Wrenne et al, case, did not construe the decree as having the effect to declare invalid the trust deed here in question or any of the aforesaid instruments executed on February 19, 1880, as it is upon the averments in the bill in that case that the judicial estoppel against complainant Martin J. is predicated.

It results from the view we take of the case, as herein stated, that all of appellant's assignments of error are overruled and the decree of the chancery court is affirmed, and a decree will be entered accordingly.

The costs of the appeal will be adjudged against the appellant Martin J. Ankenbauer, but if not collectible from him, same will be paid out of the fund in the registry of the chancery court. The cause will be remanded to the chancery court of Davidson county, Part I, for the execution of the decree by proper orders of that court.

Crownover and DeWitt, JJ., concur.